Case number: 23-cv - 02453



Oluwanisola Abolaji,

Plaintiff,

V.

The Town of Superior, a Colorado municipality, and
Tony Sdao (herein as Tony, owner of Roughrider and Sportstable), Luke Taylor (herein as "Luke" or "Mr.
Taylor" Manager/President), Rylan Reed (herein as Rylan, Manager, DOO) , Derek Robinson (herein as
Derek, Roughrider president) , Chad Jacobsen (herein as Chad Director of Baseball) , Micheal Perry
(herein as Mperry, CFO) ,
Nisola-Roughriders Futbol Academy
d/b/a NFA Riders
d/b/a Roughriders Sports Club, LLC
d/b/a Superior RoughRiders, LLC
d/b/a Roughriders Soccer – Colorado, LLC d/b/a Colorado RoughRiders, LLC
d/b/a RoughRiders Properties, LLC
Roughrider Holdings, LLC, (herein as RR)
Physical Address: 1 Superior Dr., Superior, CO 80027,

Defendants.

Registered Agent: Berg Hill Greenlead Ruscitti LLP
1712 Pearl Street, Boulder, CO 80302

## AMENDED COMPLAINT

## Jurisdiction:

1. Mr. Abolaji brings claims for race and color discrimination against defendants, Roughrider sports
   club under title VII of the Civil Rights Act of 1964 and 42 U.S.C. section 1981 , claims for aiding
   and abetting such discrimination against defendants Mr. Sdao, Mr. Taylor, Mr. Reed, Mr.
   Robinson and Mr. Perry.  Mr. Abolaji also brings claims for race discrimination against Town of
   Superior, Roughrider Sport Club, Tony Sdao and Chad Jacobsen in violation of 28 U.S.C. §
   1343(a)(3) and 42 U.S.C. § 1983 since this action seeks to redress the deprivation, under color of
   the laws, ordinances, regulations, customs and usages of the Town, of rights, privileges or
   immunities secured by the United States.

## Introduction:

2. Plaintiff Oluwanisola Abolaji (Herein as "Mr. Abolaji" or "Plaintiff") is a 38yr old
   first-generation African American male born in Illinois. Mr. Abolaji's parents immigrated to the
   United States from Nigeria shortly before having Mr. Abolaji. Mr. Abolaji, his younger sister, and
   his two older brothers. Growing up poor, Mr. Abolaji split his childhood between a trailer park in
   Illinois and a small village in Nigeria. It was in Nigeria and the trailer parks of rural America that
   Mr. Abolaji dedicated his life to developing a youth to professional program. While playing
   soccer collegiately and professionally, Mr. Abolaji created his own soccer development program
   entitled Nisola Futbol Academy and became a well known and highlighy sought out coach and
   trianer. Mr. Abolaji's knowledge of the sport from youth to professional, soccer camps, leagues,

and development of young soccer players into college and professional players is what made him an attractive partner with the Roughriders Sports Club, which seeks to develop elite athletes from various sports, including soccer, baseball, hockey, basketball and volleyball.In partnering with Roughriders, Mr. Abolaji sold Nisola Futbol Academy to Tony Sdao (herein as Mr. Sdao), owner of Roughriders Sports Club and Sportstable located in downtown Superior.

3. On November 15, of 2019 Mr. Abolaji and Micheal Perry (herein as Mr. Perry) signed a letter of intent. In December of 2019 Mr. Abolaji agreed to partner with Mr. Sdao, and sell his business to Mr. Sdao, based upon Mr. Sdao's material representations that Roughriders would provide a sports complex and funding to build a youth to professional soccer program. Mr. Abolaji also relied upon Mr. Sdao's representations that Roughriders was actively partnering with Mr. Abolaji, to develop and create a professional women's (NWSL) and mens (USL Championship) franchise. In addition to selling the majority share of his company to Mr. Sdao and the Roughriders, Mr. Abolaji also entered into a three-year employment contract with Roughriders beginning January 1, 2020 wherein he would work as the Executive Director of NFA Riders, running the youth soccer programs and developing the professional franchises, while earning $100,000.00 per year.

4. In May of 2020, Mr. Abolaji's soccer teams would practice outdoors at Williams Field located at the Superior Community Park. During one of the soccer practices, Mr. Abolaji was verbally harassed and physically threatened by a young Caucasian male, who was making monkey chants, calling Mr. Abolaji a "Nigger" and threatened to kill Mr. Abolaji on multiple occasions. Believing this individual was an outsider to the program, Mr. Abolaji attempted to obtain this individual's identity in order to report it to the authorities. Mr. Abolaji informed Rylan Reed, Director of RoughRiders Fitness at the RoughRiders Sports Club and Derek, president of RR of the incident and no action was taken. Mr. Abolaji also informed Lydia Yecke from Superior Parks and Recreation. She agreed to have the Sheriff come out to the practice field in order to ensure that Mr. Abolaji was protected.

5. On October 26, 2020, Mr. Abolaji was guiding practice with one of his soccer teams at the indoor turf field at the Sports Stable, a sports complex owned by the Roughriders and Mr. Sdao. Although Mr. Abolaji's teams were the only ones to have reserved the field given the strenuous COVID-19 restrictions that were in place at the time, Director and Head Coach of Roughrider Baseball Chad Jacobsen interrupted Mr. Abolaji's practice by pulling up the tarp that divides the baseball field and soccer field. In doing so, a few soccer balls bounced under the turf divider and onto the baseball area where Mr. Jacobsen was. Mr. Abolaji went to retrieve the soccer balls. As Mr. Abolaji went under the partially raised turf divider to get the soccer balls, Mr. Jacobsen began walking incredibly fast and angrily towards him yelling, "Know your role, boy!" and "Who the fuck are you" Mr. Jacobsen further intimidated Mr. Abolaji by getting in his face and pushing his finger against Mr. Abolaji's forehead, bumping into him and grabbing him while continuing to yell at him. Mr. Jacobsen hurled a slew of threats at Mr. Abolaji including, "I'll fuck you up boy" and "I'll fucking bury you." Mr. Abolaji perceived these comments, specifically the use of "boy" and "bury you" to be references to old South plantation references wherein slave-owners repeatedly abused, murdered and buried slaves considered to be their "property."

6. Mr. Abolaji reported the incident, as did Director of rec soccer and Assistant Coach Greg Preciado. Mr. Abolaji requested that swift action be taken against Mr. Jacobsen to ensure that it was safe for Mr. Abolaji to utilize the Sportstable for practices. Despite reporting the incident, no action was taken against Mr. Jacobsen (or any other baseball coaches) and the persistent harassment, discrimination and intimidation against Mr. Abolaji continued.

7. On October 29, 2020, Mr. Abolaji's was preparing for soccer practice when another assistant baseball coach wielded a baseball bat that he was repeatedly tapping in his hands while waving at and making eye contact with Mr. Abolaji. The clear intent of these actions were to harass and intimidate Mr. Abolaji, who has no association or affiliation with the baseball team. After the conclusion of both of these incidents, Mr. Abolaji respectfully requested the security video footage so that appropriate action may be taken against the individuals involved. Yet, Mr. Abolaji was informed that no video footage of the incidents existed.

8. Mr. Abolaji again reported the incidents on October 29, 2020 and requested to speak to HR. On November 1, 2020. Mr. Sdao responded that he is the Human Resources person for RR. Thereafter, Mr. Abolaji, Mr. Jacobsen and Mr. Sdao sat down for a meeting to discuss the incidents. At that time, Mr. Sdao told Mr. Abolaji that he was unwilling to let go of Mr. Jacobsen due to the revenue that Mr. Jacobsen brings into Roughriders. Mr. Abolaji was told to text his whereabouts to Derek in order to ensure that Mr. Abolaji and Mr. Jacobsen did not overlap within the facility. Nothing was done to prevent Mr. Jacobsen from having access to Mr. Abolaji's practice schedule. Mr. Abolaji was further told by Mr. Reed to put his head down and keep working.

9. In October and November of 2020, the word "Nigger" was written on the whiteboard at Mr. Abolaji's workstation. Mr. Abolaji notified defendants of the racial slur and vandalism that was directed at him. Again, no action was taken by Roughriders. Through it all, Mr. Abolaji continued to work hard for roughriders, yet the attacks on Mr. Abolaji would not cease.

10. In November and December after a financial meeting with Rylan, Mperry, Derek and Greg Preciado. Rylan notified Mr. Abolaji and Greg that the financial numbers that Mperry and Derek gave them were deliberately wrong and the soccer program was doing the best financially of all Roughrider sports clubs.

11. In December of 2020, Mr. Abolaji was again aggressively confronted by Mr. Jimmy Dexter, Sport Stable head of security during a winter break soccer camp. Mr. Dexter was again screaming and shouting in Mr. Abolaji's face. Mr. Abolaji's players were upset and scared for him. That incident was caught on camera. Again, no action was taken against Mr. Dexter to prevent his attacks on Mr. Abolaji.

12. Instead of the company taking action to stop the harassment and discrimination against Mr. Abolaji, Rec director Greg Preciado was offered Mr. Abolaji's position. Mr. Abolaji, for his part, continued to uphold his part of the business agreement between him and Mr. Sdao and worked hard to develop the youth and professional programs.

13. Toward that end, Mr. Abolaji assisted Mr. Sdao in obtaining a meeting with the former NWSL commissioner Jeff Plush, Owners, General Managers and coaches of NWSL franchises for the purposes of purchase development of a professional women's soccer team in Colorado. Mr. Abolaji also presented indoor and outdoor soccer leagues that he developed.

14. It was during this time that Rylan Reed informed Mr. Abolaji that because Mr. Abolaji reported the incident, Roughriders was attempting to push him out of the company and get rid of him. Rec Director Greg's Preciado felt so unsafe about the discrimination that Mr. Abolaji was subjected to that he pulled his children out of the pre-school that is located at the Sports Stable.

15. In February of 2021, the young man that was harassing Mr. Abolaji at Williams Field began Taunting Mr. Abolaji at the Sports Stable. Mr. Abolaji was understandably concerned about his

safety and well-being. He filmed the young man entering the facility in order to see if Mr. Reed could identify the young man. Upon providing Mr. Reed with the video, Mr. Abolaji was informed that the young man works out at Mr. Reed's gym, Impact, which is located inside the Sports Stable. No further action was taken against the young man to prevent his harassment or discrimination of Mr. Abolaji.

16. On March 1, 2021, after taking no action to address the harassment, hostile work Environment and discrimination that Mr. Abolaji was subjected to, Mr. Sdao came onto the soccer field during the middle of the soccer practice and began harassing Mr. Abolaji demanding he take a letter informing him of a stakeholder meeting wherein the company was looking to restructure its stakeholders, in other words, remove Mr. Abolaji from the company by taking back his 49% interest. Notice of the stakeholder meeting was previously sent to Ms. Abolaji's home address; there was no reason why he had to interrupt the middle of soccer practice to inform Mr. Abolaji of the meeting other than to intimidate Mr. Abolaji and embarrass him in front of his players. Mr. Sdao cornered Mr. Abolaji against a wall and attempted to strike Mr. Abolaji. Courtney Wilcox, Roughrider soccer secretary and Rec Director both feared that Mr. Sdao will hit Mr. Abolaji.

17. On or about March 5, 2021, the word "gorilla," an obvious racial epithet, was written across the door of the soccer storage room at the Sports Stable. In order to conduct soccer practice, Mr. Abolaji must access the storage room to get the equipment necessary for practice. A parent reported the racial slur to the company and it was taken down. No video footage of this incident was ever produced to Mr. Abolaji or any of the concerned parents that brought the incident to the soccer club's attention.

18. In anticipation of the meeting and in order to project profits and losses for first quarter 2021, Mr. Abolaji requested to see his profit-loss statements. Mr. Abolaji was given a spreadsheet that indicated that the soccer program, which he heads, had a loss of $200,000. When the company learned that Mr. Abolaji was in the process of retaining counsel for the stakeholder meeting, the company revised the profit-loss statement to reflect the actual losses sustained by the soccer program to $91,000.

19. Thereafter, in March of 2021, Mr. Abolaji was informed that despite having a full roster prepared to go for the Spring of 2021, that NFA Riders soccer program was being disbanded. Multiple parents organized and asked to meet with the heads of Rough Riders in order to hold Rough Riders accountable for the discriminatory and harassing treatment that Mr. Abolaji had been repeatedly subjected to, in addition to requesting additional information regarding the status of girls' soccer team.

20. A meeting was held on March 26, 2021 with Matt Ringer (parent), Veronica Spence (parent), Jimmy Dexter (General Manager/head if security of Roughriders Sports Stable), Derek Robinson (President of Rough Riders Sports Stable) and Mike Perry (CFO of Roughriders Sports Stable). During the meeting parents asked, 'all this going on in the background, knowing that we know they knew, why not send a statement to families. Why no transparency?" It was made apparent to complaining parents that NFA Rough Riders soccer program was officially terminated and cut from the Rough Riders / Sports Stable programs and would exist no further, despite parental, player and coaching interest in maintaining the company.

21. Moreover, it was admitted in the meeting by the employers present that neither Rough Riders nor Sports Stable has an HR professional on their payroll, and that while the club may be interested in adopting diversity and inclusion at this point, it was not a part of the companies previously. Apparently taken aback by the parents' concern for Mr. Abolaji, Derek Robinson informed

everyone present at the meeting that he is married to a minority. The parents were further notified that Rough Riders and Sports Stable were contracting with a third-party law firm to investigate the incidents, but no conclusions had been made at the present time. The parents involved in the meeting found that particularly disingenuous given the fact that there are security cameras all throughout the facilities and those whose behavior was inappropriate could easily be held accountable.

22. Then, at the beginning of April 2021, Micheal Perry emailed Mr Abolaji informing him that he has been fired and needed to apply for unemployment.

23. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively.

24. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## LEGAL CLAIMS:

## Race/Color Discrimination, retaliation, disparate treatment, disparate impact, termination of employment, different terms and conditions of employment , in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq, Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-402(1)(a), 42 U.S.C. section 1983 and 42 U.S.C. § 1981
## (Against all Defendants)

25. Plaintiff realleges and incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

26. Mr. Abolaji is black and African American, all defendants are white.

27. Mr. Abolaji, at all times was acting within the scope of his employment.

28. Defendants at all times were acting within their scope of employer.

29. Starting in or around the end of May 2020, unidentified members of town of Superior began taunting Mr. Abolaji by directing monkey chants at him, stealing soccer balls while he was coaching, and calling him a "Nigger".

30. On June 16, 2020 Mr. Abolaji reported to Mr. Reed that he was being harassed bc of his skin color and was getting taunted with monkey chants, called a "nigger" and was threatened to be murdered by harassers while working at Williams field.

31. Mr. Abolaji also reported that none of the white coaches are getting harassed and, having to check his shoulders constantly to avoid another attack is causing him to feel anxiety, paranoia and unable to focus at work.

32. Mr. Reed then advised Mr. Abolaji that he should focus on his work and not let racist actions from "racist superior boys and racist boulder men" deter him from building an amazing program for the community.

33. Fearful of further harassment Mr. Abolaji asked Mr. Reed to report incidents to Roughrider management and law enforcement so there's a record of incidents.

34. Mr. Reed did not but instead insured Mr. Abolaji not to worry about it because he has his own "special way" of taking care of it, "you focus on the work, let me get my hands dirty".

35. In spite of his assertion to elevate this matter to management and law enforcement, the harassment continued and Mr. Abolaji began mentally preparing to be murdered while working.

36. Disappointed by Mr. Reed's responses, Mr. Abolaji then told Mr. Robinson of these incidents and he responded that "my wife is part Mexican" in an attempt to relate to Mr. Abolaji's current experience with racism at work.

37. Despite acknowledging the racial harassment, Mr. Robinson did nothing, and Mr. Abolaji continued to suffer further harassment and embarassment on a daily basis.

38. As a result Mr. Abolaji began having difficulty sleeping, eating and began experiencing paranoia.

39. On June 17, 2020 Mr. Abolaji sent Lydia Yecke (Town of superior recreation coordinator) video of the gentleman who called him "Nigger", assaulted him and and also threatened to kill him while coaching at Williams field.

40. On June 17, Lydia Yecke responded to Mr. Abolaji "We will get this taken care of. So sorry you have to deal with this. Just make sure you do t put your hands on someone this way if we need to file a hate crime harassment report it's on them."

41. On June 23, Lydia Yecke notified Mr. Abolaji he is being discriminated against because of his skin color "someone sent in a complaint to the Boulders County Public Health Dept about people utilizing Williams field and not having on masks and emailed my Director. I think you and I know why this complaint was placed. Just an FYI."

42. In July of 2020, in a meeting at the Sport Stable Mr. Abolaji reported to Mr. Reed, Mr. Robinson and Mr. Perry that the racial slur "Nigger" was written on his white board at Williams field.

43. In that meeting Mr. Reed confirmed other employees also reported seeing the racial slur directed at Mr. Abolaji.

44. Mr. Abolaji expressed his concerns of working in an environment where his life is continuously threatened and requested actions to be taken against the culprit.

45. Defendants felt very uncomfortable speaking about racism and instead told Mr. Abolaji that there's nothing that could be done.

46. On October 26, Chad Jacobsen gets into Mr Abolaji's face while jabbing Mr. Abolaji with his hands.

47. While Mr. Abolaji was walking away from him, Mr. Jacobsen comes from behind Mr. Abolaji calling him "boy" and threatening "I'll fucking bury you boy".

48. Later that night Mr. Abolaji emails Mr. Sdao, Mr. Robinson, Mr. Preciado, Mr. Reed, and Mr. Perry that he was threatened by Mr. Jacobsen.

49. On October 28 in a conversation, Mr. Reed tells Mr. Abolaji not to make racial discrimination complaints in meeting with management because all the youth soccer kids were depending on him.

50. Mr. Reed further noted that Mr. Sdao recently loss ten million dollars from another sport facility he owned and Mr. Abolaji complaints would add more weight to already thin ice for Mr. Sdao.

51. Mr. Abolaji feared for his job if he filed racial discrimination complaint.

52. On October 29 a another assistant baseball coach wielded a baseball bat that he was repeatedly tapping in his hands while waving at and making eye contact with Mr. Abolaji.

53. Immediately after the incident Mr. Abolaji reported to Mr. Robinson that he did not feel safe.

54. After the conclusion of both October 26 and 29 incidents, Mr. Abolaji respectfully requested the security video footage so that appropriate action may be taken against the individuals involved. Yet, Mr. Abolaji was informed by Mr. Robinson that no video footage of the incidents existed.

55. In a November 23rd meeting with defendants, Mr. Abolaji requested to speak with a therapist due to a decline in his mental health and panic attacks from continuous taunting from Mr. Jacobsen and baseball program.

56. Mr. Sdao and defendants communicated they would accommodate his request but nothing was done and Mr. Abolaji continued to suffer from panic attacks while at work.

57. Jan 9, 2021 Rylan Reed txt Mr. Abolaji "Until 1 day some kid in the hallway at school popped off to Shal and called him a "N". Shal snapped - stabbed him in the neck with a pencil. Swift justice if you ask me but not in Fruita. He was expelled and chased out of town. And when he moved away all the racist fucks like my grandpa) won. They got what they wanted. And to this day it haunts me. Fast forward to now, a different but similar situation is in front of me. I will not let them win...I'm willing to do whatever it takes. I will sick my neck out for you, protect you, defend you but I have to trust you. Like you have to trust me. Yes I am white. But that little white hick from Fruita has a story too. This is way bigger than just you and I, way bigger than soccer... Show them the path to equality and social justice through sports.This is my calling and I believe it is your too. Don't give up on me, don't let them chase you out of town. I will have you back no matter what just as long as you don't quit!!"

58. On January 5th Mr. Abolaji suffered a severe panic attack while sleeping and started experiencing suicidal thoughts.

59. The following day Mr. Abolaji then txt Rylan Reed expressing how much the hostile work environment specifically with Mr. Jacobsen and Mr. Sdao is affecting his physical and mental health.

60. Mr. Reed responding "Can't let him, that is what he wants...we use our brains now and when he slips we are there, he wont attack you, he is talk. He is sacred that is why he acts so tough I used to pray that he would hit me so i could take it on the chin and he would be gone".

61. In and around January 7, Mr. Abolaji sent a email to Mr. Sdao and defendants frustrated that theres been a lack of support in regards to his ADA request.

62. Despite their promise to find a therapist, none was provided, and Mr. Abolaji had to find and pay for a licensed therapist which he began seeing on January 4, 2021.

63. In or around Jan 9, Mr. Reed txt Mr. Abolaji and Mr. Preciado that Temo (another roughrider employee) and Mr. Jacobsen are "proud boy's" and "racist".

64. On March 1, 2021, after taking no action to address the harassment, hostile work environment and discrimination that Mr. Abolaji was subjected to, Mr. Sdao is seen waiting over 45 minutes for Mr. Abolaji to arrive to at sport stable to conduct his team practice.

65. Once he arrived, Mr. Sdao came onto the soccer field during the middle of the soccer practice and aggressively confronts Mr. Abolaji demanding he attend a stakeholder meeting.

66. Startled by his aggression Mr. Abolaji then tells Mr. Sdao to leave him alone and attempts to get away from his harasser.

67. Using his phone, Mr. Abolaji then began videotaping Mr. Sdao.

68. Despite maneuvering to get away from Mr. Sdao, he continues to follow Mr. Abolaji demanding he attend a stakeholder meeting.

69. Seemly to walk away but returning minutes later, Mr. Sdao once again confronts Mr. Abolaji, cornering him against the wall and attempting to punch him.

70. Mr. Sdao again demands he comes to the stakeholder meeting.

71. Mr. Abolaji was extremely confused as Mr. Sdao was fully ware and expressed, Mr. Abolaji has already received stakeholder meeting information by email and mailed to his home.

72. Fearing for his life, Mr. Abolaji called the police on Mr. Sdao and emailed Mr. Robinson he does not feel safe.

73. Moments after seeing this incident Courtney Wilcox (Roughrider soccer secretary) in formed Mr. Abolaji she wants to call the ACLU to file discrimination report on Tony Sdao.

74. Also following this incident Mr. Preciado was so disturbed by the blatant harassment directed at Mr. Abolaji, he removed both of his children from Roughrider programs.

75. On or about March 5, 2021, the word "gorilla," an obvious racial epithet, was written across the door of the soccer storage room at the Sports Stable. In order to conduct soccer practice, Mr. Abolaji must access the storage room to get the equipment necessary for practice.

*__If a single event which contributes to the hostile work environment occurs within the limitations period the entire claim is timely.__* **National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117, 122 S.Ct. 2061, 2074 (U.S.,2002)**

76. A parent reported the racial slur to the company and it was taken down. No video footage of this incident was ever produced to Mr. Abolaji or any of the concerned parents that brought the incident to the soccer club's attention.

77. Following incident Mr. Reed emailed Mr. Abolaji, Mr. Sdao and other members of roughrider management that the sports stable Impact and roughrider "Good Morning Team, It was brought to my attention that there was a racial slur written on the wall next to the north entrance on the turf field. I want it to be clear, Impact Sports will not tolerate any discrimination based on race, religion, sexuality, age, gender or any other reason. ZERO tolerance. If you have any

78. information on the person or person(s) responsible or have been discriminated against in any way, please contact myself or Linda Marcus"

79. After never providing Mr. Abolaji accommodation, they instead terminated Mr. Abolaji employment.

80. Despite providing false financial statements to Mr. Abolaji, they blamed him for financial losses of the company resulting in his termination.

81. During Plaintiff's employment, Defendant Roughriders engaged in unlawful discriminatory employment practices by discriminating against Plaintiff with respect to the terms and conditions of his employment based on his race (African-American) and skin color (black).

82. Defendant's unlawful employment practices included, without limitation, disparate treatment and discharge because of Plaintiff's race and color.

83. The effect of these practices deprived Plaintiff of equal employment opportunities and otherwise adversely affected his employment status because of his race and color.

84. These unlawful employment practices were intentional.

85. The unlawful employment practices were done with malice or with reckless indifference to Plaintiff's protected rights under Title VII of the Civil Rights Act of 1964.

## SECOND CLAIM FOR RELIEF:

**Hostile work environment, harassment, Aiding, Abetting, Inciting, Compelling, and/or Coercing Race/Color Discrimination in Violation of the Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-402(1)(e)(I)**
**(Against Defendants Town of Superior, Tony Sdao, Rylan Reed, Derek Robinson, Micheal Perry, Luke Taylor,Jimmy Dexter and Chad Jacobsen)**

86. Plaintiff realleges and incorporates by reference all allegations in each and every preceding and subsequent paragraph as if fully set forth herein.

87. Mr. Abolaji is black and African American, all defendants are white.

88. Mr. Abolaji, at all times was acting within the scope of his employment.

89. Defendants at all times were acting within their scope of employer.

90. 64. On October 29 a another assistant baseball coach (who was also seen yelling at Mr. Abolaji on the Oct 26 incident) wielded a baseball bat that he was repeatedly tapping in his hands while waving at and making eye contact with Mr. Abolaji.

91. On October 29 meeting, Mr. Abolaji informed Mr. Sdao that other members of the baseball program have been recruited by Mr. Jacobsen to harass him.

92. In that meeting Mr. Robinson stated that he will adjust baseball turf schedule so there won't be any I interactions with the baseball program.

93. Despite his assertion, multiple youth soccer players, (including Mr. Reeds daughter who was also part of the soccer program) reported to Roughrider management that they heard baseball coaches, players and Mr. Jacobsen direct racial slurs and taunts towards Mr. Abolaji during practices inside sport stable.

94. In email, Mr. Abolaji requests to speak with Hr in regards to Oct 26 incident.

95. On November 1, 2020. Mr. Sdao responded that he is the Human Resources person for the Rough Rider Soccer Club.

96. Thereafter, Mr. Abolaji, Mr. Jacobsen and Mr. Sdao sat down for a meeting to discuss the incidents.

97. At that time, Mr. Sdao told Mr. Abolaji that he was unwilling to let go of Mr. Jacobsen due to the revenue that Mr. Jacobsen brings into Roughriders.

98. Through it all, Mr. Abolaji continued to work hard for roughriders, yet the attacks on Mr. Abolaji would not cease.

99. On December 21 of 2020, during a soccer camp. Mr. Abolaji was aggressively confronted by Mr. Dexter (head of security) during a winter break soccer camp.

100. Mr. Dexter is often seeing eating lunch and hanging out with Mr. Jacobsen.

101. Mr. Dexter was again screaming and shouting in Mr. Abolaji's face. In view of this incident, camp players began to cray and reported to their parents fear for Mr. Abolaji safety.

102. Mr. Abolaji then reported to Mr. Robinson that members of roughriders are hanging up on him due to their friendship with Mr. Jacobsen.

103. Mr. Abolaji requested the video footage of the incident from Mr. Robinson but was told there was no video of incident again no action was taken against Mr. Dexter to prevent his attacks on Mr. Abolaji.

104.    Instead of the company taking action to stop the harassment and discrimination against Mr. Abolaji, defendants offered Mr. Preciado, Mr. Abolaji's position.

105.    On March 1, 2021, after taking no action to address the harassment, hostile work environment and discrimination that Mr. Abolaji was subjected to by multiple members of the roughrider organization, Mr. Sdao abetting came onto the soccer field during the middle of the soccer practice and again aggressively confronts Mr. Abolaji.

106.    Mr. Abolaji then tells Mr. Sdao to leave him alone and attempts to get away from his harasser but Mr. Sdao continues tailgating over Mr. Abolaji shoulder coercing him to be at the stakeholder meeting.

107.    As he begins to walk away, Mr. Sdao turns around to taunt Mr. Abolaji by staring him down and waving goodbye.

108.    Minutes later, Mr. Sdao once again confronts Mr. Abolaji, cornering him against the wall and attempts to punch Mr. Abolaji.

109.    Fearing for his life, Mr. Abolaji calls the police on Mr. Sdao and emails Mr. Robinson he does not feel safe.

110.    Moments after seeing Mr. Sdao malice attempt to do harm, Courtney Wilcox (Roughrider soccer secretary) in formed Mr. Abolaji she wanted to call ACLU to file discrimination report on Tony Sdao.

111.    On or about March 5, 2021, the word "gorilla," an obvious racial epithet, was written across the door of the soccer storage room at the Sports Stable. In order to conduct soccer practice, Mr. Abolaji must access the storage room to get the equipment necessary for practice.

112.    A parent reported the racial slur to the company and it was taken down. No video footage of this incident was ever produced to Mr. Abolaji or any of the concerned parents that brought the incident to the soccer club's attention.

113.    Then on March 9, Mr. Sdao, Mr. Robinson and Mr. Perry knowingly presented Mr. Abolaji with false financial stamens in an attempt to deceive Mr. Abolaji into voting to dissolve the company.

114.    Before, during and after March 9 members meeting Mr. Abolaji requested to have representatives to evaluate financial numbers before being able to vote.

115.    Mr. Sdao then informs Mr. Abolaji that all soccer programs and operations must come to a stop in less than 48hrs.

116.    Following the members meeting on March 10, Mr. Taylor emailed Mr. Abolaji a "Notice of Default"

117.    Stating "RE: Notice of Default To the Managers: It has come to our attention that the estimated balance of receivables due from Nisola-RoughRiders Futbol Academy, LLC on March 15, 2021 will be ninety-eight thousand, four hundred twenty-eight dollars and sixty-seven cents ($98,428.67). If the balance owed is not paid in full by the end of the month, the Sport Stable will have no choice but to cancel all future rentals & payroll services currently provided to

Nisola-RoughRiders Futbol Academy, LLC. Please provide me with an update as soon as possible as to your plan to get your account current."

118.    Mr. Abolaji was unable to get representation to assess the figures, in the abrupt time period he was given.

119.    While Mr. Abolaji was attempting to get representation, on or around April 9, defendants fired him for being black.

120.    In doing so Defendants aided, abetted, incited, compelled, or coerced unlawful discriminatory employment practices. Defendants unlawful discrimination against Plaintiff with respect to the terms and conditions of his employment and disparate treatment based on his race (African-American) and skin color (black).

121.    Included, without limitation, disparate treatment and discharge because of Plaintiff's race and color.

122.    The effect of these practices deprived Plaintiff of equal employment opportunities and otherwise adversely affected his employment status because of his race and color.

123.    97. These unlawful employment practices were intentional.

124.    Defendants Town of Superior Tony Sdao, Rylan Reed, Derek Robinson, Micheal Perry, Luke Taylor, Jimmy Dexter and Chad Jacobsen abetted, incited, compelled, and/or coerced the unlawful employment practices with malice or with reckless indifference to Plaintiff's protected rights under the Colorado Anti-Discrimination Act.

## THIRD CLAIM FOR RELIEF: Breach of Contract, Fraud (Against Tony Sdao, Mr. Perry, Mr. Robinson, Mr. Reed, and Roughriders Sports Club)

125.    Plaintiff repeats and realleges each allegation contained in the foregoing paragraphs of the Complaint as if set forth in full herein.

126.    Mr. Abolaji is black and African American, all defendants are white.

127.    Mr. Abolaji, at all times was acting within the scope of his employment and partnership with defendants.

128.    Defendants at all times were acting within their scope of employer and partner.

129.    On or about November 19, 2019, Roughrider Holding LLC agreed to a letter of intent.

130.    On Jan 1, 2020, Mr. Abolaji began employment with defendants.

131.    On or around February 23, after a financial meeting with Mr. Perry and Mr. Robinson, Mr. Reed informed Mr. Abolaji and Mr. Preciado that defendants deliberately gave them false financial numbers in order to fire Mr. Abolaji.

132.    Mr. Reed then gave Mr. Abolaji a correct financial statement that shows the company was not in negative but $18k in profit.

133.    In his contract with defendants, it explicitly states that Mr. Abolaji receives 100% of the profits from year 1, 75% of the profits in year two.

134.    Instead of paying Mr. Abolaji his contractual agreement, he was instead fired for making racial discrimination complaints.

135.    On March 1, in a malice attempt to coerce Mr. Abolaji to attend stakeholder meeting with Roughriders Sport, Mr. Sdao attempted to punch Mr. Abolaji

136.    By doing so Mr. Sdao breached and repudiated the release in numerous material respects, including, without limitation, by failing and refusing to honor the fiduciary duties of the employment contract and partnership.

137.    Mr. Abolaji was left distraught from the March 1 incident, he suffered from the impending loss of his 49% stake in the company.

138.    Failing and refusing to adhere to federal discrimination laws, defendants denied Mr. Abolaji right to access company information.

139.    Defendants misrepresented bylaws and financial statements that Mr. Abolaji has a right to.

140.

141.    Mr. Abolaji had fully performed all of his covenants and obligations under the contract.

142.    For the reasons stated herein, Roughrider Sport Club and Tony Sdao, and each of the defendants, have breached the covenant of good faith and fair dealing.

143.    As a direct and proximate result of the Roughrider Sport Club, Tony Sdao and defendants breaches as described herein, Mr. Abolaji has been damaged in an amount to conform to proof at trial, but not less than $50,000,000.00 plus interest as allowed by law, and attorneys' fees and costs as provided by law.

## FOURTH CAUSE OF ACTION
## [For Promissory Fraud (False Promise) Against All Defendants]

144.    Mr. Abolaji repeats and realleges each allegation contained in the foregoing paragraphs of the Complaint as if set forth in full herein.

145.    At all times of employment Mr. Abolaji executed the contract on behalf of Roughrider Sport Club and Tony Sdao.

146.    At all times of Mr. Abolaji employment, Mr. Sdao acted as employer and majority owner.

147.    As its minority ownership, Mr. Abolaji was acting within the scope of his employment as a Director of soccer at the instruction and/or consent of Tony Sdao, managing member and owner.

148.    Implicit in the Contract is a covenant of good faith and fair dealing obligating the parties to each other.

149.    Tony Sdao entered into the member meeting on or about March 9 with the intention of deceiving Mr. Abolaji into believing: that the soccer program, which he is director, had a loss of $200,000 and no longer were able to operate business.

150.    In the March 9 stakeholder meeting defendants repeatedly quoted the false financial numbers.

151.    Defendants had the authority to bind Mr. Abolaji into a membership vote of dissolving and or delectation of bankruptcy.

152.    The financial representations made by Roughrider Sport Club on behalf of Mr. Abolaji, and at Tony Sdao's instruction and/or with his consent, were false at the time they were made.

153.    Mr. Abolaji, Roughrider Sport Club LLC and Tony Sdao knew they were false, and they were made for the purpose of inducing Mr. Abolaji into a membership vote of bankruptcy or dissolve company.

154.    At the time defendants made these false representations on behalf of Roughrider Sport club LLC , Mr. Abolaji was ignorant of the true facts and believed the representations to be true.

155.    Mr. Abolaji in fact relied on the representations by applying for unemployment according to the defendant's request.

156.    On our Around April 9th Mr. Perry informed Mr. Abolaji by email said he needed to apply for unemployment.

157.    Mr. Abolaji reliance was reasonable in that the false representations were made to him orally and in writing by defendants, in particular Micheal Perry (CFO), Luke Taylor (president)and Tony Sdao (Owner)

158.    Who held themselves out as Roughrider Sport Club CFO, Owner and Manager with full authority to bind Mr. Abolaji to the Release, and who had signed other documents on behalf of Roughrider Sport Club LLC with Tony Sdao knowledge and without objections.

159.    If Mr. Abolaji had known the true facts it would not have acted as it did and specifically, would not have filed for unemployment under the Release.

160.    Defendants and/or owner Tony Sdao authorized, directed, and/or participated in Roughrider Sport Club allegedly tortious conduct alleged herein, and as such, are personally liable, along with Defendants, for the tort of promissory fraud. (See, Frances T. v. Village Green Owners Assn. (1986) 42 Cal.3d 490; PMC, Inc. v. Kadisha (2000) 78 Cal.App.4th 1368, 1380-1382.)

161.    As a direct and proximate result of the fraud engaged in by Tony Sdao, Roughrider Sport Club, and defendants, Mr. Abolaji has been damaged in an amount to be determined at time of trial, but not less than $50,000,000.00 plus interest.

162.    Mr. Abolaji was aware that defendants planned to, and did, engage in the foregoing wrongful conduct and they agreed with and intended that Mr. Abolaji and defendants, engage in the above wrongful conduct.

163.    At all times Mr. Abolaji gave substantial assistance and/or encouragement to Roughrider Sports Club.

164.    Tony Sdao for the purpose of facilitating the wrongful conduct alleged herein, including, but not limited to direct communications with Roughrider Soort Club LLC regarding the resolution of

the Dispute and the Release, and that, as a result, conduct was a substantial factor in causing harm to Mr. Abolaji.

165.    By conspiring with, and aiding and abetting defendants, as alleged herein, have proximately caused harm to Mr. Abolaji.

166.    Therefore jointly and severally liable for such harm Tony Sdao, Roughrider Sport Ckub LLC, and all defendants as co-conspirators and aider and abettors.

167.    Mr. Abolaji will seek damages, according to proof at trial, for all of the harm caused by the acts of Tony Sdao and defendants, and their co- conspirators and aider and abettors.

168.    Tony Sdao, Roughrider Sport Club LLC, and their co-conspirators and aider and abettors , defendants, engaged in despicable conduct and acted with willful, reckless and conscious disregard of the rights of Mr. Abolaji, by misrepresenting financial numbers and in doing the things herein alleged, were guilty of oppression and malice.

169.    Accordingly, Mr. Abolaji seeks punitive and exemplary damages in an amount according to proof at trial.

## FIFTH CLAIM OF RELIEF: Failure to accommodate, Negligence, and disability. (Against Mr. Sdao, Roughrider Sport club)

170.    Mr. Abolaji is African American and black of Nigerian descent and between January 2020-April 2021 was an employee and partner of Roughrider Sport Club LLC.

171.    In June  2020, Mr. Abolaji began experiencing racial taunts and asuallted at work.

172.    On June 16th 2020 Mr. Abolaji reported to Mr. Reed that he is continuously getting racial abuse while working but nothing was done.

173.    Shortly after Mr. Abolaji began experiencing paranoia and anxiety from the hostile work environment at work.He knew that the demands of the soccer program might be overwhelming, given his condition and his existing commitments to coaching and operating the soccer Program.

174.    Therefore, Mr. Abolaji decided, for the first time, to seek accommodations for his physical and mental health.

175.    In November and December of 2020 Mr. Abolaji made both verbal and written accommodation requests to Tony Sdao and defendants.

176.    Tony Sdao and defendants had fiduciary duties to grant Mr. Abolaji's request. In fact on or about November 1, 2020. Mr. Sdao states that he is the Human Resources person for the Rough Rider Soccer Club.

177.    No ADA was provided for Mr. Abolaji and his health continued to decline.

178.    Under the ADA , workers with disabilities must have equal access to all benefits and privileges of employment that are available to similarly situated employees without disabilities. The duty to provide reasonable accommodation applies to all non-work facilities provided or maintained by you for your employees. This includes cafeterias, lounges, auditoriums,

company-provided transportation and counseling services. If making an existing facility accessible would be an undue hardship, you must provide a comparable facility that will enable a person with a disability to enjoy benefits and privileges of employment similar to those enjoyed by other employees, unless this would be an undue hardship.

179. In November, December of 2020 and January 5th of 2021 Mr. Abolaji, verbally and by email requested accommodation for his decline in physical and mental health.

180. In his request Mr. Abolaji explicitly highlighted the effects of Mr. Jacobsen and the Roughrider baseball program continued harassment at work.

181. Defendants deliberate indifference towards Mr. Abolaji ADA request resulted in Mr. Abolaji inability to focus and complete tasks under time limited conditions such as coaching and operation of soccer program.

182. Defendants agreed that Mr. Abolaji had a qualifying disability.

183. Tony Sdao and defendants still made No ADA for Mr. Abolaji and his health rapidly declined After not receiving a "Letter of Accommodation" or tangible resources for ADA.

184. On January 5th Mr Abolaji txt Mr. Reed expressing having severe panic attacks, and nightmares stemming from the harassment he continued to receive from Mr. Jacobsen.

185. In January of 2021 Mr. Abolaji found, began seeing, and paid for a license therapist for his panic attacks.

186. In January of 2021 after leaving the country to escape the hostile work environment Mr. Abolaji health immediately began to improve.

187. In December 2020, defendants suggested Mr. Abolaji speak to Roughrider basketball coach about his mental health issues. Mr. Abolaji hesitated to do that because he feared "negative reactions" and retaliation from defendants as they were the root cause of his conditions.

188. Mr. Abolaji felt as though he had no choice because his health had deteriorated.

189. After no ADA was provided upon his request, Mr. Abolaji noticed "negative reactions and hostility." For instance, in January 2021, Rylan Reed communicated to Mr. Abolaji that the intentions of Tony Sdao and defendants were to fire him because of his request for ADA.

190. Furthermore, similar to previous harassment and discrimination that Mr. Abolaji faced while employed by Roughrider Sport Club LLC.

191. on or about On March 1, 2021, after taking no action to address the harassment, hostile work environment and discrimination that Mr. Abolaji was subjected to, Mr. Sdao came onto the soccer field during the middle of the soccer practice threatening Mr. Abolaji take a letter informing him of a stakeholder meeting wherein the company was looking to restructure its stakeholders, in other words, remove Mr. Abolaji from the company by taking back his 49% interest.

192.    Notice of the stakeholder meeting was previously sent to Ms. Abolaji's home address; there was no reason why he had to interrupt the middle of soccer practice to inform Mr. Abolaji of the meeting other than to intimidate Mr. Abolaji and embarrass him in front of his players.

193.    Mr. Abolaji walked away from Tony Sdao harassment on the turf field, only for Tony Sdao to return several minutes later and corner Mr. Abolaji against the wall all in an attempt to punch Mr. Abolaji.

194.    Courtney Wilcox and Greg Preciado (Roughrider employees), were in so much fear from what they witnessed Tony Sdao do to Mr. Abolaji, they no longer felt safe in the sportstable or coming into work. Greg Oreciado then removed his Children from Roughrider programs.

195.    Tony Sdao was negligent, reckless and willfully violated law and fiduciary duty.

196.    Tony Sdao careless conduct caused severe emotional distress. So much so Mr. Abolaji began suffering from thoughts of suicide, panic attacks, lack of sleep, inability to eat or focus on a particular activity.

197.    Again, no action was taken against Chad Jacobsen, Jimmy Dexter and or Tony Sdao to prevent attacks on Mr. Abolaji. Instead of the company taking action to stop the harassment and discrimination against Mr. Abolaji, Greg Preciado was offered Mr. Abolaji's position. Mr. Abolaji, for his part, continued to uphold his part of the business agreement between him and Tony Sdao and worked hard to develop his recreation leagues and the professional women's league.

198.    After March 2021, defendant sent Mr. Abolaji an email announcing that he had been fired and needed to file for unemployment.

199.    Mr. Abolaji brings claims under the ADA, the Rehabilitation Act, and the Due Process Clause via Section 1983. Pickett's ADA claims implicated two theories of liability: failure-to-accommodate and conscious discrimination. Mr. Abolaji claim involved both procedural and substantive theories of liability. Those claims were based on the contention that Mr. Abolaji was an employee and had a "protected interest" in her continued employment with Roughrider Sports Club LLC.

## RELIEF REQUESTED

WHEREFORE, the Plaintiff respectfully requests:

1. That this Court assume jurisdiction;

2. That this Court enter judgment in Plaintiff's favor and against Defendants;

3. That this Court declare the actions of Defendants described in this Complaint to be in violation of Title VII of the Civil Rights Act of 1964, the Colorado Anti-Discrimination Act, 42 U.S.C. § 1983 and 42 U.S.C. § 1981;

4. That this Court award Plaintiff all appropriate relief at law and equity, including

but not limited to back pay with pre-judgment interest, front pay, a gross-up adjustment for taxes and any subrogation interests and all other make whole relief, including all available consequential/compensatory damages;

5. That this Court grant compensatory and consequential damages against Defendants, including but not limited to damages for emotional distress, humiliation, loss of income and enjoyment of life, and other pain and suffering on all claims by law in the amount to be determined at trial against the Defendants, as allowed by law;

6. That this Court grant exemplary and/or punitive damages as allowed by law;

7. That this Court award attorneys' fees and costs of this action, including expert witness fees, on all claims allowed by law;

8. That this Court award pre-judgment and post-judgment interest at the highest lawful rate; and

9. That this Court award such additional or alternative relief as may be just, proper and equitable.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

**Dated October 25, 2023.**

Respectfully submitted,

Oluwanisola Abolaji

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Cleveland Field Office**
1240 E 9th St, Suite 3001
Cleveland, OH 44199
(216) 306-1120
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/01/2023

**To:** Mr. Oluwanisola Abolaji
524 Hawthorn Circle
Frederick, CO 80530

Charge No: 541-2021-01536

EEOC Representative:        Legal Unit - (267) 589-9707

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 541-2021-01536.

On behalf of the Commission,

Digitally Signed By: Dilip Gokhale
08/01/2023

Dilip Gokhale
Field Director

**Cc:** Kathleen T Alt, Attorney (Respondent)
Berg Hill Greenleaf Ruscitti
1712 Pearl Street
Boulder, CO 80302

Please retain this notice for your records.

EEOC Form 5 (11/09)

| | |
|---|---|
| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:    Agency(ies) Charge No(s):<br>☐ FEPA<br>☒ EEOC    541-2021-01536<br>rec'd: 04/19/2021 |

| | |
|---|---|
| **Colorado Civil Rights Division** | and EEOC |
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.* | Home Phone *(Incl. Area Code)*<br>**(720) 245-0971** | Year of Birth |
|---|---|---|
| **Mr. Oluwanisola "Sola" Abolaji** | Email address:<br>**sola_soccer@hotmail.com** | **3/27/85** |

| Street Address | City, State and ZIP Code |
|---|---|
| **524 Hawthorn Circle, Fredrick, CO 80530** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **Nisola-Roughriders Futbol Academy d/b/a NFA Riders d/b/a Roughriders Sports Club, LLC d/b/a Superior RoughRiders, LLC d/b/a Roughriders Soccer – Colorado, LLC d/b/a Colorado RoughRiders, LLC d/b/a RoughRiders Properties, LLC** | **15+** | **(303) 494-4777** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1 Superior Dr., Superior, CO 80027** | |

Email address:  **Unknown**

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

**DISCRIMINATION BASED ON** *(Check appropriate box(es).)*

☒ RACE  ☒ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN

☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest  **10/26/2020**    Latest  **4/9/2021**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**Please see the attached Charge of Discrimination.**

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |