IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-02453-GPG-STV

OLUWANISOLA ABOLAJI,

    Plaintiff,

v.

IMPACT SPORTS PERFORMANCE LLC, et al.,

    Defendants.

_____

## NRFA DEFENDANTS' MOTION TO DISMISS
_____

Defendants Impact Sports Performance LLC; Nisola-Roughriders Futbol Academy d/b/a NRFA Riders, d/b/a Roughriders Sports Club, LLC, d/b/a Superior RoughRiders, LLC, d/b/a Roughriders Soccer-Colorado, LLC, d/b/a Colorado RoughRiders, LLC, d/b/a RoughRiders Properties, LLC, d/b/a Roughrider Holdings, LLC; Tony Sdao; Michael Perry; and Derek Robinson,[1] through counsel and pursuant to Fed. R. Civ. P 12(b)(6), seek dismissal of the First, Second, Fourth and Fifth Claims as pled the Second Amended Complaint ("Complaint") (#11-1) as follows:[2]

### I.    INTRODUCTION

Plaintiff Oluwanisola Abolaji, a "black and African American of Nigerian origin,"

---

[1] The moving Defendants here are collectively referred to as "NRFA Defendants."

[2] **Certificate of Conferral**: Under this Court's Civil Practice Standard 7.1B(b) conferral is not required because Plaintiff is unrepresented. However, counsel for the NRFA Defendants conferred with Mr. Abolaji, who states that he opposes the requested relief.

brings employment discrimination, hostile work environment and retaliation claims based on several discrete events in 2020 and 2021 while he was Director of Soccer and 49% owner of the Nisola-Roughriders Futbol Academy. *See* [Complaint ¶¶ 11-12.] These include (a) a third-party who directed racial epithets at Mr. Abolaji during soccer practices at a public park and an indoor facility (*id.* at ¶¶ 38, 76), (b) a baseball coach who confronted him using racially coded language (i*d.* at ¶¶ 41-48), and (c) racist graffiti he may or may not have seen (*id.* at ¶¶ 47, 56, 60, 80).[3] That Mr. Abolaji contends NRFA Defendants should have done something more on Mr. Abolaji's behalf in his First, Second and Fourth Claims, or should have taken different steps to redress these problems, as discussed below (to the extent he has even preserved these claims as a matter of law), is not sufficient to maintain viable claims under Title VII of the Civil Rights Act ("Title VII"); 42 U.S.C. §1981 (§ 1981), the Colorado Anti-Discrimination Act ("CADA"), or the American's with Disabilities Act ("ADA").

## II.    LEGAL STANDARD

Despite his pro se status, Mr. Abolaji must follow the same rules and pleading standards that govern other litigants. *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir.1992). A complaint must contain enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face" to survive a Rule 12(b)(6) challenge. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*"); *see also Ashcroft v. Iqbal*, 556 U.S.

---

[3] Mr. Abolaji also alleges NRFA Defendants mismanaged and manipulated an unspecified "Company" to deny him profits and ultimately employment. *Id.* at ¶¶ 153(a)-(q). These are the basis of Mr. Abolaji's Fifth Claim – a collection of state law causes of action over which this Court should decline supplemental jurisdiction.

662, 678 and 79 (2009) ("*Iqbal*"). The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Conclusory allegations are insufficient, *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009), and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quotation omitted). The court must avoid supplying "additional factual allegations to round out a [*pro se*] plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

### III.    ARGUMENT

### A.    Mr. Abolaji does not allege exhaustion.

As a preliminary matter, Mr. Abolaji has not pled that he exhausted the administrative remedies available to him related to each alleged act of discriminatory treatment, whether the theory arises under Title VII. §1981, and CADA (Complaint, ¶¶ 105-123) or the ADA (*id.* at ¶¶ 137-150). A plaintiff "normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018) (quotation omitted). The same rule applies to claims under the ADA and CADA. *Crist v. Denver Post DP Media Network LLC*, No. 23-cv-01551-NRN, 2023 WL 8831331, at *3 (D. Colo. Dec. 21, 2023) (noting "employment discrimination claims brought under either [the ADA or CADA] must first be administratively exhausted.").

While "failure to exhaust is now an affirmative defense, it may be raised in a motion to dismiss when the grounds for the defense appear on the face of the complaint." *Cirocco*

*v. McMahon*, 768 F. App'x 854, 858 (10th Cir. 2019) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *see Crist*, 2023 WL 8831331, at *3 n.4 (administrative exhaustion is jurisdictional under CADA but such claims may also be dismissed under Rule 12(b)(6)).

Here, Mr. Abolaji does not allege he exhausted administrative remedies as to any of the incidents described in the Complaint. *See Lincoln*, 900 F.3d at 1181 (explaining that "each discrete incident of discriminatory or retaliatory treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." (cleaned up)). For example, the body of the EEOC Charge of Discrimination is devoid of any mention of the ADA and any lack of accommodation. Nor did Mr. Abolaji even indicate on the Charge's coversheet that any disability was the basis of his claim. [*See, e.g.*, Doc. # 11-2.] NRFA Defendants are entitled to dismissal of the First, Second, and Fourth Claims against them for this reason alone.

**B.**    **Employment discrimination claims cannot be brought against individuals.**

Regardless of the threshold defect in the Complaint, Mr. Abolaji cannot pursue his First, Second, and Fourth Claims for Relief against individual defendants. Title VII imposes liability only on employers only. 42 U.S.C. § 2000e–3(a); *Haynes v. Williams,* 88 F.3d 898, 901 (10th Cir. 1996) ("Title VII continues to reflect the legislative judgment that statutory liability is appropriately borne by employers, not individual supervisors."). The ADA also "precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition." *Butler v. City of Prairie Village, Kan.,* 172 F.3d 736, 744 (10th Cir. 1999); *Rolland v. Carnation Bldg. Servs., Inc.*, No. 16-cv-00057-CMA-NYW, 2016 WL 1618142, at *2 (D. Colo. Feb. 29, 2016), *report & rec.*

4

*adopted*, 2016 WL 1586558 (D. Colo. Apr. 20, 2016) ("The ADA, ADEA, and Title VII are all statutes under which an employer may be held liable; however, these statutes do not also include statutory liability for individual supervisors.").

Under § 1981, a plaintiff may sue individuals only under certain conditions. Although "there is no requirement that the plaintiff must also be in privity of contract with a supervisor or other co-employee before the latter can be sued individually under § 1981," such individuals can be held liable only if they were "personally involved in the discriminatory conduct." *Flores v. City and Cty. of Denver*, 30 Fed. App'x 816, 819 (10th Cir. 2002). Here, Mr. Abolaji only alleges the conduct of others.

"CADA parallels federal anti-discrimination statutes, including the ADEA. As such, courts analyze claims under those two statutes under the same standards." *Williams v. City of Arvada*, No. 21-cv-02236-NYW, 2023 WL 2042246, at *4 (D. Colo. Feb. 16, 2023) (collecting cases). While CADA permits some individual liability for "aiding and abetting" employment discrimination, that requires a viable underlying claim of discrimination. *Id.* at *8. As discussed further below, the Complaint states no such claim, and it is at best "unclear whether [a supervisor] can be held individually liable for aiding and abetting a CADA violation, based on conduct taken within the scope of his employment, as a matter of law." *Id.* at *8 n.10 (citing *Judson v. Walgreens Co.*, No. 20-cv-00159-CMA-STV, 2021 WL 1207445, at *4–5 (D. Colo. Mar. 31, 2021)).

Mr. Abolaji may only bring his claims of employment discrimination against his employer, not supervisors or other individual defendants. For this reason alone, Mr. Sdao,

Mr. Perry, and Mr. Robinson are entitled to dismissal of Mr. Abolaji's First and Second Claims, while Mr. Sdao is additionally entitled to dismissal of the Fourth Claim.

**C.     The Complaint does not state a viable discrimination claim.**

Though the allegations are not entirely clear, Mr. Abolaji seems to assert claims for racial discrimination under overlapping theories of "hostile work environment, harassment, retaliation," and "aiding and abetting" in his First and Second Claims.[4] [Complaint at ¶¶ 105-123.] None of these theories are plausibly pled.

1.     <u>Hostile work environment or harassment</u>.

To state a hostile work environment claim under Title VII, Mr. Abolaji must allege sufficient facts to show "the workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Porter v. 1st Choice After Sch. Kare*, No. 20-cv-01028-RM-NRN, 2021 WL 810104, at *2 (D. Colo. Mar. 3, 2021). He must plausibly allege that (1) he is a member of a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based on race; and (4) "due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of [his] employment and created an abusive working environment." *Id.*

---

[4] Mr. Abolaji appears to include Impact Sports Performance LLC in the first two claims for relief – asserting the First Claim against "all Defendants" and identifying the company by name in the title of his Second Claim – but makes no factual allegations against the entity. The dearth of allegations concerning Impact Sports Performance LLC warrants its dismissal. *See Doyle v. Ritter*, No. 09-cv-00066-BNB, 2009 WL 581545, at *2 (D. Colo. Mar. 5, 2009) (dismissing pro se plaintiff's claim as "frivolous" where facts connecting named defendants to claim for relief were wholly absent from the complaint).

Mr. Abolaji is a member of a protected class and has alleged facts sufficient to establish that he was subject to unwelcome, race-based harassment. *See Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1142 (10th Cir. 2008) (recognizing that "boy" is "a term that has been used to demean African-American men, among others, throughout American history"). But he has not alleged discrimination so severe and pervasive as to alter the terms and conditions of employment.

A plaintiff may succeed on a hostile work environment theory either on the pervasiveness of the harassment or on its severity. *MacKenzie v. City and Cnty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005), *abrogated on other grounds by Lincoln*, 900 F.3d at 1166. However, "Title VII does not establish 'a general civility code' for the workplace." *Marks v. Sessions*, No. 16-cv-02106-WYD-MEH, 2017 WL 4278498, at \*4 (D. Colo. Sept. 27, 2017) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not amount to actionable conduct under Title VII. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quotation and citation omitted).

Courts look to the totality of the circumstances to determine whether the alleged conduct is sufficiently pervasive to create a hostile environment. *Schrader v. E.G. & G., Inc.*, 953 F. Supp. 1160, 1168 (D. Colo. 1997). Factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "In demonstrating these factors, the plaintiff 'must show more than a few isolated incidents' of enmity." *Sidlo*

*v. Millercoors, LLC*, 718 F. App'x 718, 728 (10th Cir. 2018) (quoting *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1223 (10th Cir. 2015)).

Mr. Abolaji has not alleged facts that adequately support a hostile work environment claim. Liberally construed, he alleges five incidents of harassment in the eleven months between May 2020 and March 2021. Two of these involved an unidentified "young male" who was neither an employee or supervisor and allegedly harassed Mr. Abolaji once in a park, then again nine months later in a sports facility. [Complaint at ¶¶ 38, 76.] While an employer (not individual defendants) may be held liable for acts of customers or other third parties, this requires "more than a few isolated incidents of racial enmity or sporadic racial slurs. Instead, there must be a steady barrage of opprobrious racial comments." *Durand v. Shull*, No. 21-1180, 2022 WL 1184041, at *3 (10th Cir. Apr. 21, 2022) (quoting *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (internal quotation marks omitted)).

Mr. Abolaji also alleges that racial epithets were written in the workplace three times over six months. [Complaint at ¶¶ 58, 89.] Notably, he alleges no facts establishing who wrote this graffiti; whether he personally saw it before it was taken down; or what steps NRFA Defendants took to address these incidents. *Cf. id.* at ¶ 91 ("A parent reported the racial slur to the company and it was taken down.").

Even taken together with all inferences drawn in Mr. Abolaji's favor, this is insufficient. While "the word 'pervasive' is not a counting measure," *Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1415 (10th Cir. 1997), the frequency of discriminatory conduct is relevant. *Schrader*, 953 F. Supp. at 1168. Indeed, the Tenth Circuit has

determined that "two [discriminatory] comments fall far short of the 'steady barrage'" required to show the requisite severity or pervasiveness for a hostile environment claim. *Chavez*, 397 F.3d at 832; *see also Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1366 (10th Cir. 1997) (finding five "separate incidents involving [the plaintiff] over a span of approximately sixteen months" insufficient). *Compare Azu v. Sam's Club, Inc.*, No. 18-cv-01956-RBJ, 2019 WL 5577948, at *9 (D. Colo. Oct. 29, 2019) (ten discriminatory comments over five-month period). The discriminatory comments and vandalism were not so pervasive or severe as to support a hostile work environment claim.

Nor has Mr. Abolaji demonstrated that the harassment "altered a term, condition, or privilege" of his employment—*i.e.*, that the harassment "affected [his] job," *see Chytka v. Wrigh Tree Serv., Inc.*, 925 F. Supp. 2d 1147, 1162 (D. Colo. 2013) (citation omitted), *aff'd*, 617 F. App'x 841 (10th Cir. 2015). Liberally construed, the Complaint has no specific factual allegations—only conclusions, *e.g.,* ¶¶ 107(i) & (vi), 115, 121(g)—setting forth the effect of these incidents on his employment. *See EEOC v. JBS USA, LLC*, 481 F. Supp. 3d 1204, 1226 (D. Colo. 2020) (plaintiffs failed to state a claim where they alleged that harassment they suffered "alter[ed] the terms and conditions of their employment" but failed to "allege specific facts detailing *how* the terms and conditions of [their] employment were altered by the alleged harassment") (emphasis added)). This failure also is fatal to Mr. Abolaji's harassment/hostile-work-environment claim.

2.    Retaliation.

Whether under Title VII, § 1981, or CADA, Mr. Abolaji's retaliation claims "all require that [he] prove that [he] engaged in protected activity, that the defendants took

adverse action against h[im], and that there was a causal relationship between the protected activity and the adverse action." *Lindsay v. Denver Pub. Sch.*, 88 F.4th 1323, 1327 (10th Cir. 2023). "A causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive." *Davis v. BAE Sys. Tech. Sols. & Servs., Inc.*, 764 F. App'x 741, 744 (10th Cir. 2019). This is equivalent to the "but for" theory of causation. *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014).

To establish causation, a plaintiff must show awareness by the actor (the person who decided to take the adverse employment action) of the protected activity. *Hairston v. Costco Wholesale Corp.*, No. 19-cv-02801-PAB-KMT, 2022 WL 910955, at *10 (D. Colo. Mar. 29, 2022) (no prima facie case of retaliation without facts of how the decision-makers were aware of the plaintiff-employee's complaints); *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993) (no causation absent knowledge of the protected activity).

"A retaliatory motive may be inferred when an adverse action closely follows protected activity." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999). "A six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is insufficient." *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004).

Here, the Complaint does not clearly or plausibly allege retaliation. The repeated allegations of retaliation are almost entirely conclusory: for instance, Mr. Abolaji alleges "eventual termination decisions, because [he] filed discrimination complaints" (¶ 107(xiii)), or that defendants "were negligent…[i]n firing Mr. Abolaji for his complaints of discrimination, hostile work environment and harassment" (¶ 121(h)). Nowhere, however,

10

are these conclusions supported by the requisite factual details. Most importantly, Mr. Abolaji does not allege facts establishing the dates of his "discrimination complaints," the identity of the decision-makers, what those decision-makers knew about his allegedly protected activity, or when the decision was made.

The Complaint does allege some facts regarding a meeting on November 1, 2020 in which Mr. Abolaji, Mr. Jacobsen, Mr. Perry, Mr. Robinson, and Mr. Sdao "sat down…to discuss the incidents" that took place on October 26 and 29. *Id.* at ¶¶ 51-53. But this alone is insufficient, because that meeting took place more than five months before Mr. Abolaji's alleged termination. That gap prevents the inference that this discussion caused what he characterizes as his termination. *Meiners*, 359 F.3d at 1231.

Finally, Mr. Abolaji's allegations in support of his state-law claims undercut any conclusion that he was fired in retaliation for complaints about racial discrimination. Mr. Abolaji specifically alleges that "[o]n March 8, 2021…in a zoom conference [he] expressed his extreme dissatisfaction with the financial records, disclosures, corporate governance, and financial management," accusing his partner of "attempted assault" and violation of corporate by-laws. [Complaint at ¶ 153(n)-(o).] "Then in April of 2021 Mr. Abolaji was then fired and told to seek unemployment." *Id.* at ¶ 153(q). In short, Mr. Abolaji's own account of his financial disagreements with his business partner Mr. Sdao prevents the conclusion that any protected activity was the but-for cause of his separation.

3. <u>Aiding and abetting</u>

Mr. Abolaji generally asserts that all NRFA Defendants "aided and abetted" racial discrimination. *Id.* at ¶ 108 ("Each Defendant including Tony Sdao has actually

participated and aided and abetted the discriminatory conduct of Mr. Jacobson and the other caucasian [*sic*] male").] This theory has several fatal flaws.

First, as noted above, Mr. Abolaji cannot assert such claims against individual defendants under Title VII or § 1981. Thus, any "aiding and abetting" liability could only arise under CADA. *Williams*, 2023 WL 2042246 at *8.

Second (and as with Mr. Abolaji's other claims), the allegations in the Complaint do not adequately identify which defendants "aided and abetted" what conduct, or how that conduct contributed to the violation of his rights (or which rights were violated by what conduct). *Clay v. Lares*, No. 22-cv-02657-LTB-GPG, 2023 WL 9170323, at *2 (D. Colo. Mar. 13, 2023) ("Plaintiffs must allege in a clear, concise, and organized manner what each defendant did to them, when the defendant did it, how the defendant's action harmed them, what specific legal right they believe the defendant violated, and what specific relief is requested as to each defendant."), *report and rec. adopted,* 2023 WL 9169772 (D. Colo. Apr. 14, 2023)*, appeal dismissed,* 2024 WL 79966 (10th Cir. Jan. 8, 2024). This claim can be dismissed for this reason alone.

Third, to the extent the factual allegations can be liberally construed to set forth an aiding-and-abetting claim, they appear to allege that NRFA Defendants negligently retained themselves in their corporate positions; "fail[ed] to supervise" themselves; "fail[ed] to investigate Mr. Abolaji['s] complaints;" and (for Mr. Sdao) "fail[ed] in the capacity of Roughrider Human Resource officer to provide and inform Mr. Abolaji of his legal rights." [Complaint at ¶¶ 121 (a)-(d).] Even if these conclusions could be supported by sufficient facts, they would not plausibly plead a CADA claim because NRFA entities

and NRFA executives cannot aid and abet themselves. Indeed, as alleged, Mr. Abolaji and Mr. Sdao were the only two members and managers of Nisola-Roughriders Futbol Academy, meaning that Mr. Abolaji bore the same responsibility for making personnel decisions as Mr. Sdao. See *id.* at ¶ 28.

Moreover, the Complaint "does not allege that [individual defendants] acted outside the course and scope of their employment as Plaintiff's former supervisors at any times relevant to the Complaint.… [the individual and corporate defendants] are not distinct legal actors capable of aiding and abetting one another; instead, for the purposes of liability, they are the same entity." *Judson*, 2021 WL 1207445, at *5. For this reason, too, Mr. Abolaji's aiding-and-abetting theory must fail. *Id.* ("Nothing in [CADA] appears to impose aiding-and-abetting liability upon corporations and their employees for routine, collaborative business decisions that are later challenged as discriminatory."); *but see Morales v. L. Firm of Michael W. McDivitt, P.C.,* 641 F. Supp. 3d 1035, 1041 (D. Colo. 2022) (declining to follow *Judson*); *Williams*, 2023 WL 2042246 at *8 (concluding that such liability is "unclear").

## C.    The Complaint does not plausibly state ADA violations.

Mr. Abolaji's Fourth Claim asserts violations of Title I of the ADA against Mr. Sdao and "Roughrider Sports Club LLC." [Complaint, p 16.] First, individuals cannot be liable under the ADA, so this claim against Mr. Sdao must be dismissed.

Second, Mr. Abolaji fails to state an ADA claim against any entity. To state a violation of the ADA, a plaintiff must show that her employer acted with a discriminatory animus against her because she had a disability. *See Lincoln*, 900 F.3d at 1204. This

requires Mr. Abolaji to show (1) that he is disabled within the meaning of the ADA; (2) that he is qualified for the job; and (3) that he was discriminated against because of his disability. *Id.* "Discrimination" includes "not making reasonable accommodations to the known physical ... limitations of an otherwise qualified individual." 42 U.S.C. § 12112(b)(5)(A); *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1161 (10th Cir. 1999).

The Complaint alleges, albeit imprecisely, that Mr. Abolaji "began suffering from panic attacks and anxiety disorder in 2020 and was diagnosed with disorder in 2021" (¶ 31) and that he was an experienced soccer coach (¶ 35). But Mr. Abolaji does not adequately allege facts showing that he was discriminated against based on his anxiety.

"Although a plaintiff is not required to set forth a prima facie case of discrimination in the complaint, she is required to set forth plausible claims." *Federspill v. Denver Pub. Sch.*, No. 17-cv-01480-WJM-STV, 2018 WL 6051335, at *7 (D. Colo. Sept. 12, 2018), *report and rec. adopted*, 2018 WL 4846507 (D. Colo. Oct. 4, 2018) (quotation omitted). "While specific facts are not necessary ... some facts are," and a plaintiff may not rely upon "conclusory and formulaic recitations." *Id.*

Mr. Abolaji alleges in conclusory fashion that he "requested reasonable accommodations, but Defendants never meaningfully considered or offered Plaintiff any form of reasonable accommodation to perform the position of Director of Soccer." [Complaint at ¶ 143.] But nowhere does he identify what accommodation(s) he required; what accommodation(s) he requested; when these requests were made; or to whom they were made. Mr. Abolaji does not even allege that he was unable to perform his job duties; on the contrary, he repeatedly asserts that he "continued to uphold his part of the business

14

agreement between him and Mr. Sdao and worked hard to develop the youth and professional programs." *Id.* at ¶ 72; *see id.* at ¶ 61 ("Through it all, Mr. Abolaji continued to work hard…"). Nowhere does Mr. Abolaji allege he was terminated because of his anxiety.

Mr. Abolaji simply fails to allege sufficient facts to support an ADA claim. That claim, too, must be dismissed.

**D.    The Court should decline jurisdiction over the state-law claims.**

As discussed above (and in the motions to dismiss filed by the remaining defendants), all Mr. Abolaji's federal law claims—over which this Court has original subject-matter jurisdiction pursuant to 28 U.S.C. § 1331—are subject to dismissal. The Fifth Claim asserts theories sounding in Colorado state law: fraud, fraudulent inducement, breach of contract, and breach of fiduciary duty, all implicating this Court's supplemental subject-matter jurisdiction under 28 U.S.C. § 1367. Under § 1367(c)(3), when all the "federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998). Accordingly, this Court should dismiss the Fifth Claim without prejudice for lack of subject-matter jurisdiction and remand these claims to state court.

WHEREFORE, for the reasons set forth above, NRFA Defendants respectfully request that the Court dismiss Plaintiff's First, Second, and Fourth Claims against them with prejudice and dismiss Plaintiff's Fifth Claim without prejudice.

Dated this 20th day of February 2024.

s/ David J. Goldfarb
**David J. Goldfarb**
Kathleen T. Alt
Geoffrey C. Klingsporn
Mishal Ayaz
BERG HILL GREENLEAF RUSCITTI LLP
1712 Pearl Street
Boulder, CO  80302
Telephone: (303) 402-1600
FAX: (303) 402-1601
E-mail:  djg@bhgrlaw.com; kta@bhgrlaw.com;
geoff.klingsporn@bhgrlaw.com;
mishal.ayaz@bhgrlaw.com
*Attorneys for NRFA Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of February 2024, a true and correct copy of the foregoing **MOTION TO DISMISS** was filed via the ECF system, and served on the parties as noted below:

*Via Email and U.S. First Class Mail*
Oluwanisola Abolaji
524 Hawthorn Circle
Frederick, CO 80530
Email: sola@nfa-fk.com
*Pro Se Plaintiff*

*Via ECF Filing System*
Heather Voegele Anson, Esq.
Voegel Anson Law, LLC
3516 N. 163rd Plaza
Omaha, NE 68116
Email: hovegele@v-law.com
*Attorneys for Luke Taylor*

*Via ECF Filing System*
Pascale Henn, Esq.
Business Law Advisors LLC
8700 Monrovia #310
Lenexa, KS 66215
Email: phenn@phbusinesslaw.com
*Attorneys for Luke Taylor*

*Via ECF Filing System*
Michael C. Wathen, Esq.
Ray Lego & Associates
10825 E. Geddes Ave., Suite 100
Centennial, CO 80112
Email: mwathen@travelers.com
*Attorneys for Town of Superior*

*Via ECF Filing System*
Michael W. Schreiner, Esq.
Anne L. Stuller, Esq.
Douglas A. Stevens, Esq.
Caplan and Earnest LLC
3107 Iris Ave., Suite 100
Boulder, CO 80301
Email: mschreiner@celaw.com
Email: astuller@celaw.com
Email: dsteven@celaw.com
*Attorneys for Rylan Reed and Chad Jacobsen*

*/s/ Jill Weberg*
Jill Weberg
jlw@bhgrlaw.com

17