IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO
2024 JUL 25 PM 3: 02
JEFFREY P. COLWELL
CLERK
BY_____DEP. CLK

Civil Action No. 1:23-cv-02453-SBP

Oluwanisola Abolaji Plaintiff,

v.

Impact Sports Performance, LLC and Nisola-Roughriders Futbol Academy, LLC and Tony Sdao, and Roughriders LLC

Defendants.

---

## THIRD AMENDED COMPLAINT

---

I, Oluwanisola Abolaji, Plaintiff, Pro Se, for this complaint against Defendant Impact Sports Performance, LLC ("Impact"), Nisola-Roughriders Futbol Academy (NRFA) LLC, Tony Sdao, and Roughriders LLC states as follows:

### PARTIES

1. Plaintiff, Oluwanisola Abolaji, is a black, male, African-American of Nigerian origin who resides in Frederick, Colorado. His address is 524 Hawthorn Circle, Frederick, Colorado, 80530. He was employed by the defendant at all times relevant to the allegations set forth in this complaint. He is no longer employed by the Defendant.

2. Defendant Impact Sports Performance LLC, ("Impact") is a business which offers sports training and recreation in the Town of Superior. It is located at 1 Superior Dr., Superior, CO 80027. Impact is an employer as defined by Title VII of the Civil Rights Act of 1964 and was, at all times relevant to this complaint, Plaintiff's employer.

3. Defendant Nisola-Roughriders Futbol Academy, d/b/a NFA Riders, d/b/a Roughriders Sports Club, LLC, d/b/a Superior RoughRiders, LLC, d/b/a Roughriders Soccer – Colorado, LLC, d/b/a Colorado RoughRiders, LLC, d/b/a RoughRiders Properties, LLC, (RoughRiders") is part of Impact Sport Performance LLC and is a business which is engaged in the design, development, and operation of a youth to professional soccer club. It is located at 1 Superior Dr., Superior, CO 80027. Roughriders is an employer as defined by Title VII of the Civil Rights Act of 1964 and was, at all times relevant to this complaint, Plaintiff's employer.

4. Tony Sdao is an individual who owns, manages, and directs Impact and Roughriders. Tony Sdao is also business partners with Plaintiff in where Mr. Sdao owns 51% and plaintiff owns 49% of their Roughrider soccer business.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq, 42 U.S.C. § 1981a, Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-402(1)(a), 42 U.S.C. §§ 12117(a) and 2000e-5(f), and 28 U.S.C. §§ 1331 and 1345. This Court has authority to grant a declaratory judgment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981a, Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-402(1)(a), 28 U.S.C. §§ 2201 and 2202, and authority to grant equitable relief and monetary damages pursuant to 42 U.S.C. § 12117 Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-402(1)(a), and 42 U.S.C. section 1983, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981a.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because unlawful employment practices alleged herein were committed within the jurisdictional boundaries of the United States District Court for the District of Colorado.

## FACTUAL ALLEGATIONS

7. At all times within this complaint, Plaintiff is black and African American of Nigerian origin.

8. Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981a, Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-402(1)(a), 42 U.S.C. section 1983.

9. In December of 2019, Plaintiff signed a contract to partner with Mr. Sdao, and sell his business (Nisola Futbol Academy) to Mr. Sdao, based upon Mr. Sdao's representations that Roughriders would provide a sports complex (Sportstable) and funding to build a youth to professional soccer program.

10. Plaintiff had owned and was Director of Soccer for Nisola Futbol Academy for over 15 years.

11. RoughRiders's owner, Tony Sdao, and Plaintiff contractually agreed to form a partnership beginning January 1, 2020 where Tony Sdao was 51% owner and Plaintiff was 49% . In which Plaintiff would have full access to the state of the art sport facility in Superior called the Sportstable to operate their soccer program.

12. Plaintiff relied upon Mr. Sdao's representations that Roughriders would develop and create a professional women's (NWSL) and mens (USL Championship) franchise.

13. Plaintiff was employed for RoughRiders, and served as a Director of Soccer from January 2020-April 2021.

14. As a Director of Soccer, Plaintiff's duties included the care of children, organizing, managing, overseeing and developing additional soccer programs, tournaments, camps, clinics, and developing a NWSL and USL Championship franchise.

15. Plaintiff personnel record reflects a strong performance as Director of Soccer.

16. In May of 2020, Plaintiff's soccer teams would practice outdoors at Williams Field located at the Town of Superior public park. During one of the soccer practices, Plaintiff was verbally harassed and physically threatened by a young Caucasian male, who was making monkey chants, calling Plaintiff a "Nigger", who then also physically assaulted and threatened to kill Plaintiff on multiple occasions.

17. Plaintiff reported the racial harassments, threats and assault he was receiving at Williams field by the young Caucasian male to Rylan Reed (Impact Sport and Roughrider manager, NRFA Director of operations), Tony Sdao, Derek Robinson (Roughrider sport club president), and Lydia Yecke, the Town of Superior Parks and Recreation director.

18. In July of 2020, Lydia Yecke reported to Plaintiff that The Town of Superior was getting false complaints against him stating that he was harassing kids at Williams field. Lydia stated to Plaintiff that their complaints were not adding up and she came to the field to observe the plaintiff during his team practices. After one of Plaintiff soccer practices Lydia approached plaintiff and also Greg Preciado (assistant soccer coach) stating once she viewed plaintiff and saw he was innocently coaching team practices she then knew complaints were because plaintiff was black. Lydia stated to the Plaintiff, that she was a woman of color and knew the complaints were racially motivated. Furthermore Lydia in a text message to plaintiff stated "you and I know why these complaints were made" and " if needed we will file a hate crime" in reference to the harassment plaintiff was facing.

19. On July 17, Lydia Yecke reported to Plaintiff that the harassment he was receiving was considered a hate crime and directed him to be careful not to react to racial abuse.

20. On October 26, 2020, during plaintiff team practice inside of the Sportstable (Roughrider private sporting facility owned by Tony Sdao) Chad Jacobsen who is business partners with Tony Sdao, an employee of Roughriders, and also the director of Roughrider baseball interrupted Plaintiff's practice and charged at him while chest bumping him while yelling, "Know your role, boy!" and "Who the fuck are you".

21. Mr. Jacobsen got in his face and pushing his finger against Plaintiff's forehead, bumping into him and grabbing him while continuing to yell at him.

22. Mr. Jacobsen hurled a slew of threats at Plaintiff including, "I'll fuck you up boy" and "I'll fucking bury you."

23. Plaintiff perceived these comments, specifically the use of "boy" and "bury you" to be references to old South plantation references wherein slave-owners repeatedly abused, murdered and buried slaves considered to be their "property."

24. Plaintiff reported the incident to Tony Sdao, Rylan Reed, Derek Robinson and also Micheal Perry (CFO of Roughrider sports club), as did Roughrider Director of rec soccer and Assistant Coach Greg Preciado.

25. Plaintiff then requested video footage of the October 26 incident from Jimmy Dexter (head of sportstable security) in which he responded he did not have the footage. The plaintiff then asked Mr. Reed for video footage, in which he stated he doesn't have the video footage but Jimmy Dexter in fact does have the video footage recorded on his cell phone.

26. Once the Plaintiff notified Jimmy Dexter that he was aware he in fact did have the video footage recorded on his phone, Jimmy Dexter then provided the footage to the Plaintiff.

27. Plaintiff requested that swift action be taken against Mr. Jacobsen to ensure that it was safe for Plaintiff to utilize the Sportstable for practices.

28. Despite reporting the incident, no action was taken against Mr. Jacobsen (or any other baseball coaches) and the persistent harassment, discrimination and intimidation against Plaintiff continued.

29. On October 29, 2020, inside of the Sportstable while Plaintiff was preparing for soccer practice, a assistant Roughrider baseball coach and employee of the Roughriders threatened him with a baseball bat.

30. Plaintiff respectfully requested the security video footage from Derek Robinson.

31. Derek Robinson reported to Plaintiff that no video footage of the October 29 incident existed.

32. On October 29, 2020 Plaintiff reported the October 26th and 29th incidents to Tony Sdao, Derek Robinson, Michael Perry (Roughrider CFO) and Rylan Reed and requested to speak to the Roughriders HR.

33. On November 1, 2020. Mr. Sdao responded that he is the Human Resources person for Roughrider Sport Club LLC.

34. Thereafter, Plaintiff, Mr. Jacobsen, Mr. Perry, Mr. Robinson and Mr. Sdao sat down for a meeting to discuss the incidents.

35. At that time, Mr. Sdao told Plaintiff that the incident was minor and there was no need to let go of Mr. Jacobsen due to the revenue that Mr. Jacobsen brings to Roughriders.

36. Defendants did nothing to protect Plaintiff from Mr. Jacobsen. For example, Defendants took no steps to keep Mr. Jacobsen away from Plaintiff, or prevent Mr. Jacobsen from having access to Plaintiff's practice schedule or preventing Mr. Jacobsen from being in close proximity to plaintiff during his team practices".

37. Plaintiff was further told by Mr. Reed, who was the director of operations for the soccer program and manager at Impact, to ignore the harassment, put his head down, keep working and he will handle the situation. Plaintiff then told Mr. Reed that the Roughrider baseball coaches including Chad Jacobsen would stare him down and would sarcastically wave him goodbye like the plaintiff would be fired.

38. In October and November of 2020 at Williams field and also the sport stable, the word "Nigger" was written on Plaintiff whiteboard in which he used every day for his team practices. An athletic trainer at impact sport also reported to Rylan Reed that he too saw the racial slur on the plaintiff whiteboard.

39. Plaintiff notified defendants of the racial slur and vandalism that was directed at him.

40. Defendants failed to investigate these incidents or protect Plaintiff from further racially-targeted harassment and no action was taken by Roughriders. By information and belief the vanalism may have been done by employees of the Roughriders.

41. Through it all, Plaintiff continued to work hard for roughriders, yet the attacks on Plaintiff would continue daily.

42. In December of 2020, Plaintiff was aggressively confronted by Mr. Jimmy Dexter, Sport Stable head of security during a winter break soccer camp while at the Sportstable. Mr. Dexter allowed the all white baseball coaches to continue their team practices but would continually shut down Plaintiff's team practice, preventing Plaintiff from completing his duties and materially altering the terms and conditions of his employment.

43. Mr. Dexter began screaming and shouting in Plaintiff's face causing Plaintiff's players to become upset, cry and scared for plaintiff's safety.

44. Plaintiff reported this incident through txt message to Mr. Robinson but no action was taken against Mr. Dexter to prevent further attacks on Plaintiff.

45. Following the his December soccer camps Mr. Dexter continued to harass Plaintiff stating he was not allowed to operate soccer practices in Sport Stable because of Covid and would interrupt in the middle of team practices and kick plaintiff off the turf or basketball court where plaintiff would be holding his team practice while at the sportstable facility. Plaintiff reported the harassment to Mr. Robinson and Mr. Reed.

46. In December of 2020, White staff members txt message Plaintiff stating that Chad Jacobsen's treatment towards Plaintiff was racist and discriminatory. "I am so so sorry that you have experienced this. It is horrifying and makes me sick. I told Rylan today that there is absolutely no reason Chad should ever be able to come into the facility and the leadership at the sports stable needs to do right, take action and get rid of him", "this is traumatizing and unacceptable. Unfortunately, Chad's narcissism and racism is about to drag us all down and ruin the reputation and programs run by some very good people".

47. In January of 2021 instead of the company taking action to stop the harassment and discrimination against Plaintiff, NFRA recreation of soccer director Greg Preciado was offered Plaintiff's position by Derek Robinson, Rylan Reed and Micheal Perry. Which would cause the plaintiff a loss of his wages, lose out on business opportunities, and leave him without his job.

48. Plaintiff, for his part, continued to uphold his part of the business agreement between him and Mr. Sdao and worked hard to develop the youth and professional programs for Roughriders sports club, Tony Sdao and also NFRA.

49. In or around January 7, 2021 Rylan Reed informed Plaintiff that because Plaintiff was seeking legal counsel for racial harassment, Tony Sdao was attempting to push him out of the company and get rid of him.

50. In February of 2021, the young man that was harassing Plaintiff at Williams Field began Taunting Plaintiff at the Sports Stable.

51. Plaintiff was understandably concerned about his safety and well-being and filmed the young man harassing him at the Sports Stable.

52. Plaintiff provided the video to Mr. Reed. At which point Mr. Reed informed Plaintiff that the young man works out at Mr. Reed's gym, Impact, which is located inside the Sports Stable. Mr. Reed then suggested he can set up a meeting with the young man in his office where Mr. Abolaji can then privately intimidate the young man as a payback for what he did to Plaintiff.

53. The Plaintiff was shocked and greatly angered by Mr. Reed's supposed solution. Thus declining, Mr. Reed offer to scare the young man in his office but instead insisted to Mr. Reed that he should report the young man to the police. No actions were taken by Mr. Reed against the young man to prevent the young man's harassment and discrimination of Plaintiff.

54. On March 1, 2021, Mr. Sdao came onto the soccer field during the middle of Plaintiff soccer practice and tried to force Plaintiff to take a letter by following and getting into Plaintiff's face demanding he take the letter as plaintiff attempted to maneuver away from him. Mr. Sdao kept stating the letter was informing Plaintiff of a stakeholder meeting wherein the company was looking to remove Plaintiff from the company.

55. Notice of the stakeholder meeting was previously sent to Ms. Abolaji's home address; there was no reason why he had to interrupt the middle of soccer practice to inform Plaintiff of the meeting other than to intimidate Plaintiff and embarrass him in front of his players.

56. Plaintiff began recording this incident on his cell phone and shortly after walking away from Mr. Sdao, Mr. Sdao then turned around and began tauntingly waving at Plaintiff.

Which was a common complaint plaintiff made to Mr. Sdao, Mr. Reed, Mr. Jacobsen and Micheal Perry of the taunts he would get from Chad Jacobsen. Then several minutes later Mr. Sdao again returned and cornered Plaintiff against a wall and attempted to strike Plaintiff.

57. Courtney Wilcox, Roughrider soccer secretary and Roughrider Rec Director Greg Preciado both witnessed the incident and feared that Mr. Sdao would hit Plaintiff. Courtney Wilcox stated to Plaintiff that she wanted to call the ACLU on Mr. Sdao because of what she saw him do to Plaintiff.

58. On or about March 5, 2021, the word "gorilla," was written across the door of the soccer storage room at the Sports Stable. By information and belief this may have been done by a Roughrider employee.

59. In order to conduct soccer practice, Plaintiff must access the storage room to get the equipment necessary for practice. Plaintiff as well as a parent from the soccer program reported this incident to Mr. Reed, asking him to investigate this incident, provide video footage and provide protection to Plaintiff. Mr. Reed messaged Plaintiff informing him that he notified Mr. Sdao, Mr. Robinson, Mr. Perry and Roughrider management of the racial slur directed at Plaintiff.

60. During 2020 concerned parents of the soccer program emailed Mr. Reed about multiple incidents of racial harassment directed at Plaintiff who coached their children. Asking Mr. Reed what is being done to protect Plaintiff and to hold the culprits accountable given the multiple incidents they reported throughout the year. Parents also questioned Tony Sdao and Mr. Robinson why Roughrider management had not investigated any previous reports of racial discrimination throughout 2020. Mr. Sdao and Mr. Robinson would not answer.

61. No video footage of the Gorilla incident was ever produced to Plaintiff or the concerned parents despite the multiple and visible security cameras in the location. Parents of the soccer program became greatly concerned as they found out from their March 2021 meetings with Tony Sdao and Mr. Robinson that none of their reports that they made to

Rylan Reed starting from the summer of 2020 up to March 2021 regarding the racial harassment directed at the plaintiff were ever investigated. It is likely that this video was hidden to protect employees of Roughriders or else it would have been provided.

62. Thereafter, in March of 2021, Plaintiff was informed that despite having a full roster prepared to go for the Spring of 2021, that the soccer program was being disbanded. This caused plaintiff to suffer from depression, thoughts of suicide, loss of his income, job, a soccer program that he spent his entire life building and loss of other business opportunities which included the formation of his professional mens (USL Championship pro mens soccer league) and womens (NWSL pro women's soccer league) soccer club franchises.

63. Multiple parents organized and asked to meet with the heads of Rough Riders in order to hold Rough Riders accountable for the discriminatory and harassing treatment that Plaintiff had been repeatedly subjected to, in addition to requesting additional information regarding the status of the soccer program.

64. On March 26, 2021 in the Sport stable, Matt Ringer, Veronica Spence, and other parents of players in the NRFA soccer program met with Jimmy Dexter (General Manager/head if security of Roughriders Sports Stable), Tony Sdao (Owner of sportstable, NRFA and roughriders sports club), Derek Robinson (President of Rough Riders and Sports Stable) and Mike Perry (CFO of Roughriders and Sports Stable). During the meeting parents asked, 'all this going on in the background, knowing that we know they knew, why not send a statement to families. Why no transparency?"

65. During this meeting Tony Sdao, Derek Robinson and Micheal Perry informed the parents that the NFA Rough Riders soccer program was officially terminated and cut from the Rough Riders / Sports Stable programs and would exist no further. Upon their decision to terminate the soccer program, the plaintiff was then fired and no longer had income or a job despite parental, player and coaching interest in maintaining the company.

66. Moreover, Parents were told by defendants that neither Rough Riders nor Sports Stable has an HR professional on their payroll or had a diversity and inclusion policy.

67. Apparently taken aback by the parents' concern for Plaintiff, Derek Robinson informed everyone present at the meeting that he is married to a minority.

68. The parents involved in the meeting found that particularly disingenuous given the fact that there are security cameras all throughout the facilities and those whose behavior was inappropriate could easily be held accountable.

69. Plaintiff began suffering from panic attacks and anxiety disorder in 2020 and was diagnosed with disorder in 2021 and since that time has managed his anxiety through diet, rest and therapy.

70. Then, at the beginning of April 2021, Micheal Perry emailed Plaintiff informing him that he had been fired and needed to apply for unemployment.

**FIRST CLAIM FOR RELIEF AGAINST IMPACT, TONY SDAO, AND ROUGHRIDERS**

**(Terms and Conditions of Employment - Section 1981 and Title VII Race and Color (Black), Wrongful termination)**

71. Plaintiff hereby incorporates and realleges the preceding paragraphs as if stated fully, herein.

72. Plaintiff is in protected class based on race.

73. Plaintiff was qualified for the position and was performing the job adequately.

74. As a Director of Soccer, Plaintiff's duties included the care of children, organizing, managing, overseeing and developing additional soccer programs, tournaments, camps, clinics, and developing a NWSL and USL Championship franchise.

75. Once Plaintiff complained of racial discrimination, defendants fired him.

76. Similarly situated employees who are not black, were not exposed to or expected to simply cope with racism.

77. The conduct of Defendant's supervisors, co-workers and customers as alleged in the preceding paragraphs above all violate Plaintiff's rights as guaranteed by Title VII of the Civil Rights Act of 1964.

78. As a result of the conduct of the Defendant and its agents as described above, Plaintiff has been damaged in an amount to be determined at trial, including loss of wages, diminution in earning capacity, damage to his reputation, loss of opportunity for promotion, loss of benefits, loss of his company, loss of opportunity for professional growth, unjust termination, and for pain, suffering, and emotional distress.

## SECOND CLAIM FOR RELIEF AGAINST IMPACT AND, TONY SDAO ROUGHRIDERS

**(Terms and Conditions of Employment - Section 1981 and Title VII , Race and Color (Black) hostile work environment)**

79. Plaintiff hereby incorporates and realleges the preceding paragraphs as if stated fully, herein.

80. Plaintiff is in protected class based on color.

81. Plaintiff was qualified for the position and was performing the job adequately.

82. As a Director of Soccer, Plaintiff's duties included the care of children, organizing, managing, overseeing and developing additional soccer programs, tournaments, camps, clinics, and developing a NWSL and USL Championship franchise.

83. Plaintiff's terms and conditions of employment were detrimentally altered due to severe and pervasive racism and Defendant's ongoing tolerance of racist actions and behavior by their employees and customers because they prevented Plaintiff from performing the duties he had been hired to perform.

84. Plaintiff was consistently subjected to harassment at work, which was deliberate, malice and severe to the point it affected his employment in creating an abusive work environment. Which in turn affected his ability to perform at work.

85. Similarly situated employees who are not black, were not exposed to or expected to simply cope with racism.

86. The conduct of Defendant's supervisors and co-workers as alleged in the preceding paragraphs above all violate Plaintiff's rights as guaranteed by Title VII of the Civil Rights Act of 1964.

87. As a result of the conduct of the Defendant and its agents as described above, Plaintiff has been damaged in an amount to be determined at trial, including loss of wages, diminution in earning capacity, damage to his reputation, loss of his company, loss of opportunity for promotion, loss of benefits, loss of opportunity for professional growth, unjust termination, and for pain, suffering, and emotional distress.

**THIRD CLAIM FOR RELIEF AGAINST IMPACT AND ROUGHRIDERS**

**(Terms and Conditions of Employment - Retaliation - Title VII and section 1981)**

88. Plaintiff hereby realleges and incorporates the preceding paragraphs as if stated fully, herein.

89. Plaintiff's program was canceled and he was terminated by Defendants because he sought legal counsel to address ongoing incidents of racism and abuse. Such actions under Title VII, are retaliatory and violate his rights as guaranteed by Title VII of the Civil Rights Act of 1964.

90. The conduct against Plaintiff included negative treatment, verbal and physical abuse, making work more difficult, and termination of employment.

91. In January 2021 Roughrider and Impact manager Rylan Reed notified plaintiff that defendants were going to fire him for complaining about the discrimination he face. The defendants then pushed Plaintiff out of the company because he complained about the racial harassment he was experiencing at work.

92. There is a causal relationship between the protected activity and the conduct against Plaintiff because similarly situated employees who were not subject to racial abuse and did not seek to address the problem like Plaintiff were not similarly treated.

93. The conduct of the Defendant and its agents, were intentional, malicious, or showed reckless indifference to Plaintiff's federally protected rights and resulted in his being treated differently than other employees who did not advocate their rights and violated his rights as guaranteed by Title VII of the Civil Rights Act of 1964.

94. As a result of the conduct of Defendant's supervisors/managers and, Plaintiff has been damaged in an amount to be determined at trial, including front pay, back pay, loss of income, diminution in earning capacity, damage to his reputation, loss of opportunity for promotion, loss of benefits, loss of his company, loss of opportunity for professional growth, unjust termination, and for pain, suffering, emotional distress and compensatory damages.

### E. REQUEST FOR RELIEF

95. That this Court assume jurisdiction;

96. Grant judgment in favor of Mr. Abolaji and declare that Defendants have violated 42 U.S.C. § 1981 and Title VII.

97. Require Defendants to provide plaintiff with four, 3 years salaries of $80,000 for him to employ coaches and staff members allowing plaintiff to restart a new soccer program;

98. Order Defendants to purchase a minimum of 42 acres of land and fund an indoor athletic facility equal to the cost of the construction of the Sportstable in a location chosen by and facility designed by Plaintiff within Boulder, Superior, Louisville, Erie, Golden or within Weld County area and to donate that property to a non profit of plaintiffs choosing.

99. Order sufficient remedial relief to make whole the Plaintiff including a 49% ownership of a NWSL and USL Championship franchise, retroactive position of Director of Soccer, Mr. Abolaji assumes 100% ownership of NFARIDERS, payment of back pay with interest, health insurance and related benefits; and other appropriate nondiscriminatory measures to overcome the effects of the discrimination;

100. Award Plaintiffs compensatory damages for the pain and suffering he experienced as a result of Defendants' failure to comply with the requirements of , Title VII and 42 U.S.C. § 1981; and Order such other appropriate relief as the interests of justice require and punitive damages.

101. That this Court award Plaintiff all appropriate relief at law and equity, including but not limited to back pay with pre-judgment interest, front pay, a gross-up adjustment for taxes and any subrogation interests and all other make whole relief, including all available consequential/compensatory damages;

102. That this Court grant compensatory and consequential damages against Defendants, including but not limited to damages for emotional distress, humiliation, loss of income and enjoyment of life, and other pain and suffering on all claims by law in the amount to be determined at trial against the Defendants, as allowed by law;

103.    That this Court grant exemplary and/or punitive damages as allowed by law;

104.    That this Court award attorneys' fees and costs of this action, including expert witness fees, on all claims allowed by law;

105.    That this Court award pre-judgment and post-judgment interest at the highest lawful rate; and

106.    That this Court award such additional or alternative relief as may be just, proper and equitable.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated July 25, 2024.

Respectfully submitted,

Oluwanisola Abolaji
524 Hawthorn Cir, Frederick Co 80530