IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 23-cv-02453-GPG-STV

OLUWANISOLA ABOLAJI,

Plaintiff,

v.

IMPACT SPORTS PERFORMANCE, LLC,
NISOLA-ROUGH RIDERS FUTBOL ACADEMY, LLC,
TONY SDAO, and
ROUGH RIDERS LLC,

Defendants.

---

**ORDER**

---

Before the Court are two objections to the Recommendation of United States Magistrate Judge Timothy P. O'Hara (D. 164): Defendant's Objection to the Recommendation of United States Magistrate Judge (D. 173) and Plaintiff's Objection to Magistrate Judge's Recommendation (D. 171). The Court referred the NRFA Defendants' Motion to Dismiss Third Amended Complaint (D. 130). Judge O'Hara recommended that the motion to dismiss be granted in part and denied in part (D. 164). The Court has considered the non-objected portions of the Recommendation in full, applying a clearly erroneous standard, and finds no error on the face of the record. The Court has conducted a full and complete de novo review of those matters properly objected to and overrules all objections and AFFIRMS and ADOPTS the Recommendation.

1

Therefore, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss for the following reasons as set forth below.

## I. FACTS

Plaintiff, a "black, male, African-American of Nigerian origin" asserts three employment discrimination claims under § 1981 and Title VII against Defendants Impact Sports Performance LLC (Impact Sports), Nisola-Roughriders Futbol Academy (NRFA), Tony Sdao, and RoughRiders LLC (RoughRiders).[1] Impact Sports is "a business which offers sports training and recreation in the Town of Superior" (D. 123 ¶ 2). NRFA and RoughRiders are part of Impact Sports and are "engaged in the design, development, and operation of a youth to professional soccer club" (*id.* ¶ 3). Tony Sdao is the owner and manager of Impact Sports and RoughRiders (*id.* ¶ 4). Plaintiff, who partnered with Defendants to operate a soccer program in Superior, Colorado, alleges that he was wrongfully terminated on the basis of race, subjected to a hostile work environment, and terminated in retaliation for reporting racism (*id.* ¶¶ 71-94).

Plaintiff first signed a contract with Defendant Sdao in December 2019 to direct the Nisola Futbol Academy and help develop a professional women's and men's franchise (*id.* ¶¶ 9, 12). Plaintiff experienced several instances of verbal and physical racial harassment while in this role, starting as early as May 2020 and continuing through April 2021, when Plaintiff was terminated (*id.* ¶¶ 16, 20, 29, 38, 42, 45, 50, 58). Plaintiff repeatedly reported the harassment to individuals employed by or associated with RoughRiders, including Mr. Sdao himself (*id.* ¶¶ 17, 24, 32, 44, 52, 59). In November 2020, Defendants organized a meeting between Plaintiff and one of his repeated harassers – an individual employed by RoughRiders – "to discuss the incidents" (*id.* ¶ 34).

---

[1] The Court draws the operative facts as set forth in Plaintiff's Third Amended Complaint (TAC) (D. 123).

Other than this meeting, "Defendants did nothing to protect Plaintiff" from harassment and failed to investigate the incidents Plaintiff reported (*id.* ¶¶ 36, 40).

In March 2021, Plaintiff was notified that "the company was looking to remove Plaintiff" (*id.* ¶ 54) and "the soccer program was being disbanded," meaning that Plaintiff would lose his job (*id.* ¶ 62). Plaintiff received an email at the beginning of April 2021 "informing him that he had been fired and needed to apply for unemployment" (*id.* ¶ 70).

Plaintiff filed the instant complaint, his Third Amended Complaint, on July 25, 2024 (D. 123). He had filed three prior complaints (D. 1; D. 6; D. 11), amending each pursuant to a judicial order, and was granted "one <u>final</u> opportunity to amend" on June 4, 2024 (D. 112 at 7). Defendants filed a Motion to Dismiss Plaintiff's TAC on September 3, 2024 (D. 130). Judge O'Hara issued a Recommendation on July 31, 2025 (D. 164) and both parties filed objections (D. 171, 173).[2]

## II. LEGAL STANDARD

### A. Recommendation of a United States Magistrate Judge

Under 28 U.S.C. § 636(b)(1)(B), this Court may designate a magistrate judge to consider dispositive motions and submit recommendations to the Court. When a magistrate judge submits a recommendation, the Court must "determine de novo any part of the magistrate judge's [recommended] disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection to a recommendation is properly made if it is both timely and specific. *United States v. 2121 East 30th St.*, 73 F.3d 1057, 1059–60 (10th Cir. 1996). An objection is sufficiently specific

---

[2] Plaintiff also filed a Motion for Leave to File a Sur-Reply (D. 155) and a Motion for Judicial Notice of Exhibits in Support of Third Amended Complaint (D. 157). Judge O'Hara granted the unopposed Motion for Leave to File a Sur-reply and accepted the Sur-Reply "as part of the Court's consideration of Defendants' Motion to Dismiss" (D. 164 at 35). Judge O'Hara denied Plaintiff's motion for Judicial Notice "because [the Court] only considers information within the four corners of the TAC in making this Recommendation and may not take additional evidence into consideration in issuing this Recommendation" (*id.* at 36). Neither party contests either decision.

if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id*. at 1059. In conducting its review, "[t]he district judge may accept, reject, or modify the [recommendation]; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). A party's failure to file such written objections may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). When this occurs, the Court is "accorded considerable discretion" and "may review a magistrate's [judge's] report under any standard it deems appropriate." *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas*, 474 U.S. at 150).

### B. Pro Se Litigant

The court must construe the amended complaint liberally because Plaintiff is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the court should not be an advocate for a pro se litigant. *See Hall*, 935 F.2d at 1110.

### III. ANALYSIS

### A. Plaintiff's Objection

Plaintiff objects to Judge O'Hara's recommendation that some of Plaintiff's claims be dismissed (D. 171 ¶ 17). Plaintiff argues that Recommendation "fails to account for critical evidence already in the record and further supplemented herein" (*id.* ¶ 18).

Plaintiff does not identify specific evidence already "in the record" that Judge O'Hara failed to consider. Instead, Plaintiff merely makes the broad allegation that he has presented substantial evidence warranting denial of dismissal (*id.* ¶ 17). As a result, Plaintiff's objection

lacks specificity directing the Court where to focus its attention, and the Court is not required to consider the issue de novo. *See United States v. 2121 East 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Thomas v. Arn,* 474 U.S. 140, 147 (1985)); *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas*, 474 U.S. at 150). Accordingly, the Court finds no clear error in the Recommendation and agrees with Judge O'Hara's thorough analysis of Plaintiff's evidence.

Plaintiff's contention that he provided sufficient supplemental evidence in his Objection to warrant denial of dismissal lacks merit as the Court is limited to facts presented in the complaint when reviewing a motion to dismiss. *See Brown v. City of Tulsa*, 124 F.4th 1251, 1263–64 (10th Cir. 2025) ("[I]n assessing whether a plaintiff has stated a claim for relief, a court must restrict its review to only the 'allegations within the four corners of the complaint,' and cannot consider other pleadings or external allegations" (quoting *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019))). "Exceptions to this rule are limited to: (1) documents attached to the complaint as exhibits, (2) documents referenced in the complaint that are central to the plaintiff's claims, provided their authenticity is undisputed, and (3) matters subject to judicial notice." *Id.* (citing *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)). The exhibits Plaintiff included in his objection were not included in the TAC and thus are not proper for the Court to consider on a Motion to Dismiss. They also do not fall into any of the three listed exceptions.

Upon de novo review, the Court fully affirms Judge O'Hara's analysis of Plaintiff's facts and conclusion that Plaintiff failed to present sufficient facts to state a claim against Defendants NRFA, Impact Sports, and Tony Sdao.

**B. Defendant's Objections**

      1.  The Court incorrectly concluded RoughRiders was NRFA's parent company to construct an employer/employee relationship.

After reviewing the pleadings, the Court remains unsure of the nature of the relationship between RoughRiders and NRFA but, ultimately, does not need to decide the issue. The Court determines that Judge O'Hara reasonably inferred from the information provided in TAC that "'NRFA' is meant to be a subsidiary of 'RoughRiders LLC'" (D. 164 at 16). The TAC names as a party NRFA, "d/b/a NFA Riders, d/b/a Roughriders Sports Club, LLC, d/b/a Superior RoughRiders, LLC, d/b/a Roughriders Soccer Colorado, LLC, d/b/a Colorado RoughRiders, LLC, d/b/a RoughRiders Properties, LLC, ('RoughRiders')" (D. 123 ¶ 3). As noted by Judge O'Hara, the TAC also refers to NRFA and RoughRiders as "a business" (*id.*). The TAC does not further clarify the relationship and neither does Defendants' Motion to Dismiss (D. 130) or Defendants' Objection to Judge O'Hara's Recommendation (D. 173). As such, the Court cannot discern what the relationship between these two entities is and cannot say for certain that Judge O'Hara's conclusion is incorrect.

Regardless of the relationship, Judge O'Hara did not rely on NRFA being a subsidiary of RoughRiders to construct an employer/employee relationship between RoughRiders and Plaintiff, as Defendants argue. The Recommendation discusses the relationship between RoughRiders and NRFA only for the purpose of determining whether Plaintiff was an employee of NRFA – not RoughRiders, and Judge O'Hara concluded Plaintiff was not an employee of NRFA (D. 164 at 16-17). In his analysis of the relationship between RoughRiders and Plaintiff, Judge O'Hara did not discuss Plaintiff's relationship with NRFA, anyone employed by NRFA, or RoughRiders's relationship with NRFA. Thus, his inference that NRFA was a subsidiary of RoughRiders had no

6

effect on his analysis of Plaintiff's relationship with RoughRiders. Additionally, Judge O'Hara recommended dismissal of Plaintiff's claim against NRFA, which neither party has objected to.

The Court does not reach a conclusion on the relationship between NRFA and RoughRiders but does not need to as it agrees with Judge O'Hara's entirely separate conclusion that RoughRiders was Plaintiff's employer for the purposes of Plaintiff's Title VII claims.

> 2. The Court incorrectly applied the hybrid test to determine that RoughRiders was Plaintiff's employer.

Judge O'Hara correctly held that in the Tenth Circuit, *Bristol v. Board of County Commissioners of County of Clear Creek,* 312 F.3d 1213 (10th Cir. 2002) (*en banc*), provides the appropriate tests to determine whether a defendant is an employer in the Title VII context. *See Knitter v. Corvias Mil. Living, LLC*, 758 F.3d 1214, 1225–26 (10th Cir. 2014) ("[T]his circuit chooses among three different tests to determine whether a defendant is an employer depending on the situation: (i) the hybrid test; (ii) the joint employer test; and (iii) the single employer test." (citing *Bristol,* 312 F.3d at 1217-1218)). Judge O'Hara explained the situation in which each test is applied:

**Joint Employer Test**

Under the "joint employer test," two separate entities are both employers when "they co-determine the essential terms and conditions of employment." *Bristol*, 312 F.3d at 1218 (citations omitted). "In other words, courts look to whether both entities 'exercise significant control over the same employees.'" *Id.* (quoting *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997)). "Most important to control . . . is the right to terminate '[employment] under certain conditions. . .." *Id.* at 1219 (citations omitted). Also relevant are the entity's "ability to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; . . . day-to-day supervision of employees, including employee discipline; and . . . control of employee records, including payroll, insurance, taxes and the like." *Knitter*, 758 F.3d at 1226 (citation and quotations omitted). The analysis is employee-specific, "focusing on the entities' relationships to a given employee." *Sandoval v. City of Boulder, Colorado*, 388 F.3d 1312, 1324 (10th Cir. 2004).

7

**Single Employer Test**

The "single employer test" may hold nominally separate entities liable when they "effectively constitute a single employer." *Bristol*, 312 F.3d at 1218 (citations omitted). There are four factors to consider: "(1) interrelations of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control." *Id.* at 1220 (citing *EEOC v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 571 (6th Cir. 1984)). The third factor is generally considered the most important. *Id.* (citations omitted).

**Hybrid Test**

In the sole employer context, the hybrid test "looks at the economic realities of the situation," *Oestman v. Nat'L Farmers Union Ins. Co.*, 958 F.2d 303, 305 (10th Cir. 1992) (quoting *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir 1979)), and emphasizes the "employer's right to control the means and manner of the worker's performance." *Benaissa*, 2021 WL 5710033, at *2 (citing *Lambertsen,* 79 F.3d at 1028). The test also considers other factors, including:

> the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the employer or the employee furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment, whether by time or by job; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties.

*Id.* No one factor is conclusive, and courts should look at the totality of the circumstances. *Id.*

(D. 164 at 14-15).

Applying the joint and single-employer tests, Judge O'Hara determined that Plaintiff did not plead facts sufficient to show that NRFA, Impact Sports, or Tony Sdao was his employer (D. 164 at 16-18). Neither party objects to these conclusions, and the Court, finding no clear error, affirms the Recommendation. Therefore, RoughRiders is the only entity left as a possible employer.

The hybrid test is appropriate to determine if there was an employer-employee relationship between Plaintiff and RoughRiders. *See Lambertsen v. Utah Dep't of Corr.,* 79 F.3d 1024, 1028 (10th Cir. 1996) (concluding that the hybrid test was proper to determine whether the defendant was the plaintiff's employer under Title VII). Defendants are correct that the hybrid test is typically used to distinguish an employee from an independent contractor (D. 173 at 4). *See Knitter,* 758 F.3d at 1226.[3] However, Defendants fail to realize that although neither party asserts Plaintiff is an independent contractor, the essential inquiry in this case is that which the hybrid test was designed to address: was Plaintiff an employee or not? The non-qualifying classification of independent contractor is not important. Judge O'Hara applied the appropriate test for this situation and provided a thorough explanation of its application.

> The TAC repeatedly alleges facts to support that RoughRiders LLC was Plaintiff's employer such that it had a right to control the manner and means of Plaintiff's employment. First, after signing a contract with Defendant Sdao,12 Plaintiff alleged that he was "employed for [sic] RoughRiders." ECF 123 ¶ 13; *see also* ¶ 42 (referencing "the terms and conditions of his employment"). Towards the end of his employment, the CFO of RoughRiders LLC "emailed Plaintiff informing him that he had been fired and needed to apply for unemployment." ECF 123 ¶ 70. This clearly alleges that Defendant RoughRiders LLC both hired and fired Plaintiff. Second, Plaintiff alleges that "*Roughriders* would develop and create a professional women's (NWSL) and men's (USL Championship) franchise." *Id.* ¶ 12 (emphasis added). This demonstrates that the *business* was developing the soccer program, not Plaintiff. To that point, Plaintiff alleges that despite the alleged harassment, he "continued to work hard *for* roughriders." *Id.* ¶ 41 (emphasis added). Third, RoughRiders LLC also exercised control over the soccer program by terminating it while Plaintiff was still working for RoughRiders LLC. *Id.* ¶¶ 62 & 65. Fourth, the TAC repeatedly alleges that Plaintiff reported the incidents of harassment to RoughRiders LLC management and sought a human resources contact for RoughRiders LLC. *See, e.g., id.* ¶¶ 32 & 59. Fifth, Defendant RoughRiders LLC furnished the facilities (the Sport Stable) for Plaintiff to coach his teams. *Id.* ¶ [9]. Sixth, Plaintiff had a "personnel record," suggestive of an employer/employee relationship. *Id.* ¶ 15. These factual allegations, taken to be true, plausibly demonstrate that Plaintiff was an employee of

---

[3] For a time, the Circuit also used the hybrid test to determine which of two entities was a plaintiff's employer, but the en banc decision in *Bristol* clarified that the joint employer test, not the hybrid test, is to be used in such situations. *Bristol,* 312 F.3d at 1218.

RoughRiders LLC. Most important of these allegations is that Defendant RoughRiders LLC hired and fired Plaintiff, demonstrating control over his performance. *Id.* ¶¶ 13; 70; 91.

Regarding Defendants' argument that Plaintiff has not pleaded the existence of a written agreement, ECF 130 at p. 5, the Court stresses that plausibility does "not mandate the pleading of any specific facts in particular." *Khalik*, 671 F.3d at 1194. Rather, the totality of the circumstances alleged demonstrates an employment relationship with Defendant RoughRiders LLC.

Upon de novo review, the Court agrees with Judge O'Hara's determination that Plaintiff pleaded facts sufficient to show that RoughRiders was Plaintiff's employer under the hybrid test (D. 164 at 18-21).

> 3. Plaintiff failed to state a plausible claim for wrongful termination under Title VII and §1981 against RoughRiders.

Judge O'Hara's Recommendation set out the applicable elements for a prima facie discrimination claim under Title VII and §1981: "(1) [h]e is a member of a protected class, (2) [he] suffered an adverse employment action, and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination" (D. 164 at 23 (quoting *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1139 n.13 (10th Cir. 2024))). Defendants advocate for the inclusion of a fourth element: "he was treated less favorably than others not in the protected class" (D. 130 at 8; D. 173 at 6). As noted by Judge O'Hara, the Tenth Circuit recently remarked that, according to the "well-established proposition that we do not mandate the pleading of any specific facts in particular for Title VII claims," "the similarly situated question" is but "one method by which" a plaintiff can show the third element is met. *McNellis,* 116 F.4th at 1139 n.13 (citations and internal quotation marks omitted).

Here, the parties do not dispute that Plaintiff satisfies the first two elements (D. 164 at 24). As for the third element, Defendants take issue with the Recommendation's conclusion that the

circumstances outlined by Plaintiff give rise to an inference of discrimination. The Court agrees with Judge O'Hara's determination that the timing of Plaintiff's firing and the number of "blatant race-based insults, comments, and incidents concerning employees of RoughRiders LLC in the months leading up to his termination" are circumstances giving rise to an inference of discrimination (*id.* at 26). Judge O'Hara summarized the evidence Plaintiff provided as follows:

> First, Mr. Dexter, the head of security for Sport Stable, allowed the practices of "all white baseball coaches" to continue while Plaintiff's team practices were "continually shut down . . . preventing Plaintiff from completing his duties and materially altering the terms and conditions of his employment." ECF 123 ¶ 42. Plaintiff alleges this as a routine occurrence and something that was applied unequally based on his race. *Id.* ¶¶ 42; 45. Plaintiff also alleges circumstances which the white employees would not experience, such as being told to endure explicit racial harassment (racial epithets written on Plaintiff's whiteboard in his workspace and in the soccer storage room), verbal harassment, and physical intimidation. This alleged racial discrimination caused multiple witnesses to complain to RoughRiders LLC management. . . . Also, Plaintiff identifies the prominent baseball coach and "director of Roughriders baseball," Mr. Jacobsen, as someone who racially harassed and physically threatened him. ECF 123 ¶¶ 20-23. Racial epithets were written on Plaintiff's work whiteboard, both at an outside work location, at the Sport Stable generally, and across the door of the soccer storage room at the Sport Stable. *Id.* ¶¶ 38, 58. "Multiple parents" asked to meet with the "heads of RoughRiders" to address the "discriminatory and harassing treatment." *Id.* ¶ 63. Plaintiff alleges that he was told that Defendant Sdao was trying to terminate him for his attempt to seek legal counsel to address the "racial harassment." *Id.* ¶ 49.

(D. 164 at 26-27).

Upon de novo review, the Court agrees with Judge O'Hara that by providing "names, dates, and details of multiple racially motivated incidents tied to Roughriders LLC and/or the facilities used by RoughRiders LLC," Plaintiff has satisfied his non-onerous burden of providing facts sufficient to state a claim (*id.* at 27).

#### 4. There was no hostile work environment.

Defendants argue that Judge O'Hara erred by accepting Plaintiff's claim that the racist graffiti targeted at Plaintiff can be ascribed to RoughRiders, and RoughRiders is "not liable for the

conduct of members of the public or employees" (D. 173 at 7, 8). In Defendant's view, Plaintiff's allegations are "the sort of speculative pleading *Twombly* requires courts disregard" (*id.* at 8).

Defendants' argument reflects a misunderstanding of the *Twombly/Iqbal* legal standard applicable on a motion to dismiss. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true and interpreted in the light most favorable to the non-moving party, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The standard is a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotations and citation omitted).

As Judge O'Hara noted, Plaintiff alleges various incidents of oral and written racial epithets, physical intimidation, and name-calling from which it is reasonable to infer that he was intentionally targeted for racial harassment "both in connection with this employment and at his place of employment" (D. 164 at 32). *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Judge O'Hara was therefore correct to "draw[] inferences in Plaintiff's favor and declin[e] to infer that the acts of graffiti were committed by random individuals" (D. 164 at 31). He wrote:

> At this stage, the Court determines that Plaintiff has sufficiently pleaded that the harassment was pervasive and/or severe as it relates to RoughRiders LLC. Plaintiff alleges incidents spanning six months, nearly half of his tenure. Among these incidents, Plaintiff was subjected to racial epithets verbally and through graffiti, Plaintiff was physically intimidated in these incidents, he was called "boy," and multiple, uninvolved individuals noticed a pattern of racial harassment. These allegations, if proven true, could constitute a hostile work environment. *See, e.g., Tademy*, 614 F.3d at 1135-38 (detailing incidents including physical intimidation, anonymous racist graffiti which often contained the N-

word, being called "boy," an email referring to "slaves," targeted random drug testing, and a life-sized noose which "caused [Plaintiff] to become so nauseated that he vomited" were sufficiently pervasive and severe to survive summary judgment). Further, Plaintiff alleges that these incidents interrupted his soccer practices, which indicates the harassment altered the conditions of his work environment. Defendants generally frame Plaintiff's allegations as merely "third party" harassment and assert that the "racial epithets were written in publicly accessible places. . ." ECF 130 at p. 11. The Court draws inferences in Plaintiff's favor and declines to infer that the acts of graffiti were committed by random individuals when the TAC alleges that the graffiti was intentionally placed and directed at Plaintiff both in connection with his employment and at his place of employment. Plaintiff also alleges that Defendants refused to investigate the source of this conduct. *See Tademy*, 614 F.3d at 1143 (defendant could not escape liability for racist graffiti in locker rooms, bathrooms, and other shared spaces when it was "impossible to know because [defendant] failed to investigate the incidents of graffiti").

(D. 164 at 31-32).

Similarly, the Court declines to accept Defendants' argument that the meeting between Plaintiff, Mr. Jacobsen, Mr. Perry, and Mr. Sdao "shows that [RoughRiders] responded to his complaints of racial harassment in a reasonable manner" (D. 173 at 8) when Plaintiff alleges that, on the contrary, Defendants refused to investigate his complaints (D. 164 at 32).

Upon de novo review, the Court agrees with Judge O'Hara that Plaintiff has stated sufficient facts to show a hostile work environment.

### 5. RoughRiders did not retaliate against Plaintiff.

Plaintiff claims RoughRiders fired him in retaliation for reporting racial harassment (D. 123 ¶ 89). "To establish a prima facie case of retaliation, [a plaintiff] must show that: (1) []he engaged in protected activity; (2) []he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action." *Walkingstick Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Oklahoma Bd. of Regents*, 125 F.4th 1321, 1339 (10th Cir. 2025) (quoting *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1150 (10th Cir. 2008)). Defendants do not dispute that Plaintiff has established the first two elements but argue that Plaintiff "has not

alleged any causation between the protected activity and the adverse employment action" (D. 173 at 9).

"A plaintiff may establish a causal connection by showing that an 'adverse action closely follow[ed] protected activity.'" *Id.* (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)). "[A] one and one-half month period between protected activity and adverse action may, by itself, establish causation,' but . . . 'a three-month period, standing alone, is insufficient.'" *Id*. (quoting *Anderson,* 181 F.3d at 1179). Temporal proximity is measured "between the plaintiff's 'last instance of protected activity' and the adverse employment action." *Id.* (quoting *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 804 (10th Cir. 2007)).

The Court agrees with Judge O'Hara that Plaintiff has pleaded facts sufficient to show that his termination was causally related to his reports of racial harassment. Plaintiff reported racial harassment on several occasions, the last being in February 2021 (D. 123 ¶ 52). At most, Plaintiff was terminated two months after his last report: Defendants informed Plaintiff in March 2021 – around one to two months after his last report of racial harassment – that the soccer program was being disbanded, meaning Plaintiff would lose his job (*id.* ¶ 62), and Plaintiff received an email that he had been fired "at the beginning of April 2021" (*id.* ¶ 70). A period of two months may be sufficient on its own to establish causation, but even if it were not, Plaintiff provides additional evidence of causation. *See O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) ("Because O'Neal presented additional evidence from which a reasonable jury could find causation, this court need not address whether two months and three weeks, by itself, is sufficient to support a prima facie case of retaliation."). Plaintiff states that "[i]n or around January 7, 2021 Rylan Reed informed Plaintiff that because Plaintiff was seeking legal counsel for racial

14

harassment, Tony Sdao was attempting to push him out of the company and get rid of him" (D. 123 ¶ 49). The Court agrees with Judge O'Hara that this claim "clearly alleges retaliation" (D. 164 at 34).

Defendants argue that the last instance of alleged harassment occurred in December 2020, and Plaintiff's last report was in regard to the "gorilla" incident, which occurred after Plaintiff had been notified of his impending termination (D. 173 at 8-9). The date of the last instance of alleged harassment is irrelevant to the retaliation inquiry, which is tied to the "last instance of protected activity." *See Walkingstick Dixon*, 125 F.4th at 1339. In this case, the last instance of protected activity was Plaintiff's report of racial harassment in February 2021. Plaintiff's report of the "gorilla" incident is similarly irrelevant because the relevant date for a retaliation claim is the last instance of protected activity *before* the adverse employment action. It does not matter if Plaintiff was further harassed after the adverse employment action, only that the adverse employment action was in response to Plaintiff's protected activity.

Upon de novo review, Court finds that Plaintiff has stated sufficient facts to plead a claim for retaliation against RoughRiders.

> 6. This case must be dismissed due to Plaintiff's failure to exhaust his administrative remedies.

Defendants mistakenly conflate Plaintiff's failure to *plead* exhaustion of administrative remedies with failure to exhaust administrative remedies. Defendants do not claim that Plaintiff failed to exhaust administrative remedies as required by Title VII but only that Plaintiff failed to plead that he did so in the TAC (D. 173 at 9 ("Abolaji failed [to] plead that he exhausted his administrative remedies.")). Contrary to Defendants' argument, "[s]tatutory 'exhaustion' requirements do not supplant Rule 8's pleading standard, which requires only 'a short and plain

15

statement showing that the pleader is entitled to relief" (D. 164 at 11 (citing Fed. R. Civ. P. 8(a); *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 515 (2002)). Defendants cite *Kinney v. Blue Dot Servs. of Kansas,* 505 F. App'x 812, 814 (10th Cir. 2012) to support their proposition that "failure to allege exhaustion of remedies in [a] complaint requires the Court to dismiss the complaint" (D. 173 at 9). *Kinney* is inapplicable to this case because it dealt with a motion for summary judgment, which is analyzed under a different, stricter legal standard, and Plaintiff here, unlike the plaintiff in *Kinney,* has revealed in other filings that he received a right-to-sue letter from the EEOC.

In any case, Plaintiff attached a copy of the right-to-sue letter he received from the Equal Employment Opportunity Commission (EEOC) showing proper exhaustion of administrative remedies to his original complaint (D. 1-2), First Amended Complaint (D. 6 at 19), and Second Amended Complaint (D. 11-2). The Court considers the letter as attached to Plaintiff's prior complaints as part of the TAC. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint."); *Gray v. Sorrels*, 744 F. App'x 563, 568 (10th Cir. 2018) (considering plaintiff's affidavit, which was attached to the original complaint but not the amended complaint, as part of his amended complaint for the purposes of a motion to dismiss).[4]

Upon de novo review, the Court agrees with Judge O'Hara that Plaintiff has provided evidence that he has exhausted all administrative remedies and his failure to plead that he did so in the TAC is not fatal to his claim.

---

[4] As an unpublished opinion, *Gray v. Sorrels* is not binding on this Court but is cited for its persuasive value.

## IV. CONCLUSION

Accordingly, the Court OVERRULES all Objections. The Recommendation is AFFIRMED and ADOPTED as an Order of this Court (D. 164). NRFA Defendants' Motion to Dismiss Third Amended Complaint (D. 130) is granted in part and denied in part.

Consequently, Plaintiff's wrongful termination, retaliation, and hostile work environment § 1981 and Title VII claims against Defendants Tony Sdao, Impact Sports, and NRFA are DISMISSED with prejudice.[5] The Clerk of Court SHALL terminate Defendants Tony Sdao, Impact Sports, and NRFA from this action.

DATED September 10, 2025.

BY THE COURT:

Gordon P. Gallagher
United States District Judge

---

[5] The Court accepts Judge O'Hara's recommendation to dismiss Plaintiff's claims with prejudice "because amendment would be futile. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (dismissal with prejudice is proper when dismissal is under 12(b)(6) and amendment is futile)" (D. 164 at 35). Because Plaintiff has been afforded four opportunities to amend the Complaint (D. 1; D. 6; D. 11; D. 123) (with explicit and extensive instructions on how to properly amend (*see* e.g., D. 5; D. 7)), over twenty-two months and Plaintiff's TAC still falls far short of pleading plausible claims against these three Defendants, "future iterations of the complaint are unlikely to remedy the identified deficiencies; the Court determines that amendment would be futile" (D. 164 at 35).